SALLEE & WIFE, Respondents, v. CHANDLER, Appellant.

1. By the law of Kentucky in the year 1830 a married woman had full power of disposition over personal property vested in her for her sole and separate use; the joinder of her husband in a deed of transfer executed by her would not affect its validity.
2. By the law of Kentucky at that time a reversionary interest in slaves belonging to a woman at the time of her marriage vested immediately in her husband.
3. By the same law a trustee was not incapacitated to buy the trust property from his *cestui que trust;* such transactions should, however, be closely scrutinized.

*Appeal from Marion Circuit Court.*

The plaintiffs, John H. Sallee and Elizabeth Sallee, his wife, in their petition and the amendments thereto, stated that on the 4th day of January, 1821, Sarah Garnett, the aunt of said Elizabeth, made, in Jessamine county, Kentucky, her deed conveying to Henry Chandler, the father of said Elizabeth, certain slaves, Mary and Levi and the future increase of said Mary, in trust for the use and benefit of said Elizabeth; she, the said Sarah, reserving to herself in said deed the use and profits of said slaves for and during her natural life; that said deed was duly recorded; that said slave Mary has had certain children, Lewis, Mariah and Aleck; that said Mariah has had a child, Edmund; that said slaves are in the possession of defendant, who claims them as his own property; that said trustee, Henry Chandler, departed this life in 184–; that said Sarah Garnett departed this life in the year 1856, whereupon plaintiff Elizabeth became the owner of said slaves. "If it be necessary to the protection and adjudication of the rights of plaintiff Elizabeth that she have a trustee, plaintiffs pray the court to appoint one, or direct the execution of the trust. Plaintiffs pray judgment for the possession of said slaves and that they have general relief."

The following is the finding of the facts upon which the court based its decree: "In January, 1821, Sarah Garnett, by deed of that date, conveyed to Henry Chandler (who was the brother of said Sarah and the father of the plaintiff Elizabeth and of the defendant) several slaves—including the slave Levi in the petition mentioned, and Mary, the mother of the slaves Lewis, Mariah and Alexander in the petition mentioned—in trust for the sole and separate use of the plaintiff Elizabeth, her niece, who was then a minor of the age of eighteen years, and residing with her father, the said Henry; the said Sarah Garnett reserving to herself by said deed a life interest in said slaves. The court further finds that in 1829 the said Elizabeth intermarried with the plaintiff, John

9—VOL. XXVI.

H. Sallee ; that from and after the date of said marriage the said Henry Chandler reported and represented that said deed of trust to himself for the use of the said Elizabeth was defective, and that in consequence of such defect the plaintiff would have no interest in said slaves at the death of said Sarah Garnett, but that said slaves would belong to him, the said Henry. The court further finds that said deed of trust was duly recorded April 9, 1821, in the county of Fayette, Kentucky, where said parties and said slaves then resided ; that in 1830, when the plaintiffs were on the eve of emigrating to the state of Missouri, a negotiation was entered into by and between said Henry Chandler, acting for and on behalf of the said Sarah Garnett, and the plaintiffs, for the purchase of the plaintiff Elizabeth's interest under said trust deed in the slaves, and the plaintiff, by the procurement of said Henry, executed the instrument read in evidence relinquishing to said Henry Chandler, the trustee, and to his heirs, the slaves mentioned in the trust deed, and among the number the slave Levi in controversy, and Mary, the mother of the slaves Lewis, Mariah and Alexander in controversy and grandmother of the infant slave Edward mentioned in the amended petition. The court further finds that the consideration of relinquishment was the surrender by Mrs. Garnett of her interest in a girl slave named Maria, then about nine years old, a child of the slave Dorcas mentioned in the trust deed, and born after said deed was executed. The court further finds that said relinquishment was understood by the parties to be for the benefit of Mrs. Garnett, and that Mrs. Garnett was then sixty-four years of age ; and that from the date of said trust deed in 1821 to the time plaintiff removed to this state, after said relinquishment was executed, all of said parties resided in the state of Kentucky ; and that both the trust deed and relinquishment were executed in that state. The court further finds that in 1830 plaintiffs removed to this state and retained the possession of said slave Maria up to the time of her death in 1833 ; that in 1832 Henry Chandler, the trustee, and Mrs. Garnett removed to this state, bringing

the slaves with them, and that Mrs. Garnett resided with said Henry in this state up to the time of his death which occurred in 1845, and that since the death of said trustee Mrs. Garnett has resided with the defendant and retained the possession of said slaves (excepting the slaves Charles and Major manumitted by her) up to the time of her death, which occurred in October, 1856; that prior to her death Mrs. Garnett made her will, duly executed and admitted to probate, by which she manumitted the slave Mary and devised the slaves in controversy to the defendant; that defendant has since that time had possession of said slaves, claiming title under said devise adversely to the plaintiffs. The court further finds that the slaves Lewis, Mariah and Alexander were born of the woman Mary, mentioned in said trust deed, since 1832 and before the death of Mrs. Garnett. Under this state of facts the court declares the law to be, 1st, that the deed of January, 1821, conveyed the legal title in slaves to Henry Chandler, to be by him held in trust for the use of the grantor, for her natural life, and remainder over to the plaintiff Elizabeth; 2d, that the relinquishment executed by plaintiffs to said trustee, under the circumstances, is against the policy of the law and void; 3d, that the issue of the female slaves born after the execution of the trust deed and during the lifetime of Mrs. Garnett followed the condition of the mother, and that the title to said issue is in plaintiff Elizabeth by virtue of said trust deed, and not in defendant as devisee of Mrs. Garnett."

The court appointed a new trustee and by its decree vested the title to the slaves in him in trust for the sole and separate use of the plaintiff Elizabeth.

*Dryden* and *S. T. & A. D. Glover*, for appellant.

I. The relinquishment was to Mrs. Garnett. The relinquishment was not void; it was valid. If the relinquishment had been, in any just sense, a relinquishment to Chandler, the trustee, yet the court erred in declaring it to be void. At the worst it could have been but voidable. But suppose

the sale in this case was by the plaintiff to Chandler, and not to Mrs. Garnett, and suppose it objectionable for that reason, the plaintiff can not recover upon his petition. He does not seek to set aside the sale nor for a reconveyance ; nor does the judgment of the court set aside the sale to Chandler.

*Lipscomb,* for respondents.

I. The purchase by Chandler while he yet held the relation of trustee was fraudulent and void, and did not divest the title. (2 Johns. Ch. 252 and cases cited; 8 Wheat. 421; 1 A. K. Marsh. 532; 7 Monr. 232.) The deed of trust having been made in Kentucky, the laws of that state should govern in its construction.

Scott, Judge, delivered the opinion of the court.

It is not easy to determine the ground on which the plaintiffs base their right to maintain this action. They ask for the appointment of a trustee to manage the trust property, but it does not appear by what means they now claim that property after the conveyance of it to the father of the defendant. If they found their claim on the nullity of the deed of relinquishment, on the ground that the property was the separate property of the wife and therefore could not be conveyed by the husband, their pretension can not be supported. This case occurred in Kentucky. All the facts which affect the rights of the parties transpired whilst they were residents of that state. The laws of that state then must ascertain and determine their rights. It seems to be well settled in Kentucky that a married woman has full power absolutely to dispose of personal property vested in her for her sole and separate use. (Hord v. Hord, 5 B. Mon. 83; Bell & Terry v. Kellar, 13 B. Mon. 381.) If a married woman in Kentucky can dispose of her separate estate as a *feme sole*, then, if the deed of her aunt created in her a separate estate, it was competent for her to dispose of it. The concurrent execution of the deed with the wife by the husband can not affect the validity of the transaction. If the property is not

regarded as the separate estate of the wife, then it is equally well settled by the laws of Kentucky that the reversionary interest of the wife in slaves depending on the determination of a previous life vests on marriage in the husband, and may by him be absolutely disposed of. (Miller v. Miller, 1 J. J. Marsh. 169 ; Ewing v. Hancley, 4 Lit. 349 ; Merriwether v. Booker & wife, 5 Lit. 257–8 ; Pinkard v. Smith, Littel S. C. 331.) It will be borne in mind that the circumstances, out of which this controversy arises, transpired prior to 1845–6, when by a statute the marital rights of the husband in relation to the property of the wife underwent a change.

If the right to relief is placed upon the ground that Chandler, the trustee, could not purchase the trust property from the *cestui que trust*, the proposition is stated more broadly than the law seems to warrant. Lewin, in his work on trusts, says that " when it is said that a trustee for sale may not purchase the trust property, the meaning must be understood to be that the trustee may not purchase from himself; for there is no rule that a trustee may not purchase from his *cestui que trust*. However, a purchase by the trustee from his *cestui que trust* is at all times a transaction of great nicety, and one which the courts will watch with the utmost diligence. The exception runs, it is said, so near the verge of the rule that it might as well be included under it." (Lewin on Trusts, 379.) In Coles v. Tricothick, Lord Eldon said : " I agree the *cestui que trust* may deal with his trustee so that the trustee may become the purchaser of the estate. But, though permitted, it is a transaction of great delicacy, and one which the court will watch with the utmost diligence ; so much that it is very hazardous for a trustee to engage in such a transaction. A trustee may purchase from the *cestui que trust*, provided there is a distinct and clear contract, ascertained to be such after a jealous and scrupulous examination of all the circumstances, that the *cestui que trust* intended the trustee should buy, and there is no fraud, no concealment, no advantage taken by the trustee of information acquired by him in the character of trustee. It is a difficult

case to make out whenever it is contended that the exception prevails. (9 Vesey, 244.) It will rest with the trustee to establish in evidence that there was such a *bona fide* contract between them, as, according to the rule just referred to, will sustain the purchase in a court of equity. The court, if satisfied as to this evidence, will support the transaction; but if any unfair advantage has been taken by the trustee by withholding information or other fraudulent dealing, the purchase will at once be set aside; and mere inadequacy of price will go a great way in the mind of the court to constitute such fraud, though the purchase will not necessarily be set aside on that account alone. (Hill on Trustees, 785–6.)

The law of Kentucky does not seem to controvert these views. In the case of Pugh's heirs v. Bells's heirs, 1 J. J. Marsh. 406, the court said, " the alleged purchase from the defendants in error is entitled to no consideration. They were infants, and if they had not been the contract could not be enforced, because it was made with their trustee for a greatly inadequate consideration, and must have been made without a knowledge of their rights." So in the case of Findley & wife v. Peterson's Exec'r, 2 B. Mon. ——, it was held that though a contract between parent and child in relation to property held by the father as natural guardian of the child will be subjected to a jealous scrutiny, yet where there is no extrinsic proof of fraud, mistake or improper influence, the contract will not be set aside.

As the legal estate in the trust slaves did, on the death of Chandler the trustee, devolve on his personal representative or representatives, being his executor or administrators, it would seem that they should be made parties to the suit, that in the event of a judgment for the plaintiffs the legal title may be subject to the control of the court.

The judgment will be reversed and the cause remanded, that the plaintiffs, if they see fit, may amend their petition and proceed in conformity to this opinion. The other judges concur.