THE STATE *ex rel.* P. H. JONES, Appellant, v. JOSEPH. L. JONES *et al.*, Respondents.

St. Louis Court of Appeals, March 7, 1893.

1. **Practice, Appellate:** FAILURE TO OBJECT IN TRIAL COURT. An appellant will not be heard to complain in this court of a departure in the pleadings of the opposing party, when he failed to object thereto in the trial court.

2. **Administration:** RES ADJUDICATA. The validity of the assignment of the share of a distributee in the estate of a decedent is not determined by an order of distribution, made by the probate court in favor of the distributee subsequently to the assignment, since the court has no jurisdiction to determine, and the proceedings before it therefore do not involve, the question.

3. ———: VALIDITY OF PURCHASE OF SHARE OF DISTRIBUTEE BY EXECUTOR. The purchase of a share of a distributee in the estate of the testator is *prima facie* voidable by the distributee. Nor does it matter whether the purchase is made by the executor in his own right or as agent for another. And *held per curiam* that, in order to uphold such a purchase, the executor must show that it was fairly made and for full value; but *held* by BIGGS, J., that the payment to full value was not essential.

4. ———: ———: LACHES. Nor is a distributee, whose share is pur-
chased by the executor for a third person guilty of such laches as will
preclude him from avoiding the sale, if he challenges the validity of
the transfer at the final settlement of the executor, and prior to the
payment of the distributive share to the purchaser.

5. ———: ———: RETURN OF PURCHASE PRICE BY DISTRIBUTEE. When
the amount of the distributive share thus purchased by an executor
exceeds the price paid to the distributee therefor, the distributee is
not bound to tender to the purchaser the price so paid in order to
avoid the transfer.

*Appeal from the Warren Circuit Court.*—HON. W. W.
EDWARDS, Judge.

REVERSED AND REMANDED.

*Thomas M. Knapp* and *Thomas R. Harris,* for
appellant.

(1) The purchase by J. L. Jones, the executor,
from relator, the legatee, was an attempt on the part
of the executor to make a profit out of his trust. He
cannot speculate in his duties as executor, or make
them the subject of a contract for his own benefit, or
for that of another. Such a contract is illegal and
against public policy. *Landis v. Saxton*, 89 Mo. 375;
*Bent v. Priest*, 86 Mo. 475; *Patterson v. Booth*, 103 Mo.
413; *Thornton v. Irwin*, 43 Mo. 153; *State v. McKay*,
43 Mo. 603; *Boardman v. Florez*, 37 Mo. 561. It is not
necessary to show actual fraud. Fraud will be pre-
sumed from the relationship of the parties. *Thornton
v. Irwin*, 43 Mo. 153; *Hawley v. Cramer*, 4 Conn. 717;
*Michoud v. Girod*, 4 How. 503; *Davoue v. Fanning*, 2
Johns. Ch. 252; 1 Story on Equity Jurisprudence,
[13 Ed.] sec. 322. The executor was equally prohib-
ited from acting as agent. If the rule might be
avoided by showing that the executor was acting as
agent for another, it would be wholly ineffective. The
distinction of its being a weaker temptation is, to use

the apt expression of Lord Eldon, too thin to form a safe rule of justice. *Hawley v. Cramer*, 4 Conn. 717; *Ex parte Bennett*, 10 Ves. 385; *Davoue v. Fanning*, 2 Johns. Ch. 252; *Rennick v. Butterfield*, 11 Foster, 70; *Coal Co. v. Sherman*, 30 Barb. 553. Where an executor purchases a legacy not yet due from the legatee, or the interest of a legatee in the estate, pending administration, and takes an assignment thereof, he may obtain credit for the amount of the purchase money with interest, as a payment on the legacy, but such assignment can in no event operate as an assignment, or to transfer to such executor any right as an assignee, as against the assignor. *Tatum v. McLelland*, 50 Miss. 1; *Barton v. Hassard*, 3 Dr. & War. 461; *Wright v. Arnold*, 14 B. Mon. 638; *Goodwin v. Goodwin*, 48 Ind. 584; *Smith v. Townshend*, 27 Md. 368. (2) The probate court had jurisdiction to adjudicate the claim of the legatee, and, if it had not jurisdiction to adjudicate that of the assignee, it was the assignee's business to resort to some court which had that jurisdiction, and not stand by while the fund, a share of which he claimed, was being disposed of by a court which had jurisdiction to dispose of it, which enters its judgment for no other purpose than that of protecting the executor, and which may enforce that judgment by the severest process known to the law. *Bauer v. Kastner*, 1 Dem.; *Wright v. Fleming*, 12 Hun, 469; *Wright v. Fleming*, 136; 76 N. Y. 517.

*Johnson, Smith & Drunert*, for respondents.

(1) The order of distribution was made in conformity with the statutes and rulings of the appellate courts of this state. The probate court had no jurisdiction over the question of the validity of the assignment in controversy, and its order of distribution is, therefore,

not conclusive. *Johnson v. Jones*, 47 Mo. App. 237; *Knowlton v. Johnson*, 46 Me. 489; Woerner on Administration, secs. 151, 1011, 1235, note. (2) The executor had the right to purchase the distributive share of the relator, provided that the transaction was fair. *Staples v. Staples*, 24 Gratt. 225. The rule prohibiting an executor from purchasing or acting as agent in the purchase of decedent's property has no reference to sales other than probate sales. *Bryant v. Jackson*, 99 Mo. 585; *Dillinger v. Kelly*, 84 Mo. 561; *Grayson v. Weddle*, 63 Mo. 522. If the administrator has an interest in the estate, the rule is well established that he may purchase at his own sale, provided the sale be fairly conducted. *Frazier's Ex'r v. Lee*, 42 Ala. 25. A sale by an executor to himself is not void *per se*, and, if voidable, it can only be taken advantage of by persons interested in the estate, such as creditors or heirs. If a sale by an administrator to himself is not *per se* void, then certainly a sale by another person to the administrator would not be void *per se*. There is, however, a very decided distinction between a sale by an administrator to himself and a sale by another person to an administrator. Such sale is not void, but such sales stand like other sales upon the fairness and honesty of the transaction, and such sales can only be avoided in a direct proceeding for that purpose. The case at bar falls within this rule. *Grayson v. Weddle*, 63 Mo. 523; *Mitchell v. McMillen*, 59 Mo. 252; *Frasier's Ex'r v. Lee*, 42 Ala. 25; *Wayland v. Crouk*, 79 Va. 602; *Staples v. Staples*, 2 Gratt. 225; *Denslop v. Mitchell*, 11 Ohio, 117; *Harrington v. Brown*, 5 Pick. 519, 521; *McKay v. Young*, 4 H. & M. (4 Va.) 430; *Huger v. Huger*, 9 Rich. Eq. 217; *Clark v. Drake*, 63 Mo. 354; *Dillinger v. Kelly*, 84 Mo. 561. (3) Relator procured the sale to be made. It was made at his instance and request. He received the purchase price, and executed

a writing transferring all his interest in the estate. He thus induced the parties to change their situation, and is, therefore, now estopped from asserting the invalidity of the contract. Bigelow on Estoppel [3 Ed.] p. 480, and cases cited; *Favill v. Roberts*, 50 N. Y. 222. The relator is also estopped by his acquiescence in an affirmance of the sale and transfer. He permitted the sale to stand for about three years and a half, until a final settlement of the estate was made, and then for the first time manifests his dissatisfaction. *Allenman v. Manning*, 44 Mo. App. 4, 10.

BOND, J.—This petition is upon the bond of Joseph L. Jones, executor of Julia A. Dearing, deceased, and his sureties for failure to pay the relator his distributive share under the will of the deceased, ordered to be paid to him by the probate court on final settlement of said executor. The answer was that the relator had assigned to Juliet A. Jones, through her agent (the executor), his entire interest in said estate; that the executor, after his final settlement and with due notice of such assignment, paid the amount which had been adjudged to relator in the order of distribution, to-wit, $397.46, to Juliet A. Jones, taking and filing her receipt therefor and depositing the same with the papers of said estate. The relator replied, *first*, that, notwithstanding the assignment set up by defendants in their answer, the subsequent order of distribution adjudged the share so assigned to him (relator); *second*, that the assignment was made to the executor in his own right, and not as agent of Juliet A. Jones, and was induced by false and fraudulent representations and concealments concerning the assets, which were relied upon by relator. The relator specially prayed for "such relief as he would have been entitled to, had such assignment not been made;" and also for general relief.

The case was tried on these issues. This disposes of the position taken by the respondents as to the change from an action at law in the plaintiff's petition to an action in equity in his reply. Conceding, for the argument, that the reply was a departure from the case stated in the petition, still the defendants failed to make "timely objections" on that account in the trial court by motion to strike out. They cannot now be heard on appeal to complain of the issues accepted by them. *Cravens v. Gillilan*, 73 Mo. 524, 527; *Spurlock v. Railroad*, 93 Mo. 530, 537; *Scovill v. Glasner*, 79 Mo. 449, 455; *Spurlock v. Railroad*, 104 Mo. 658, 660.

The facts in this case, so far as they are not admitted in the pleadings, are that, on the day and place therein mentioned, the relator executed the following assignment:

"Know all men by these presents that I, Patrick H. Jones, of the city of Galveston, in the state of Texas, have this day, in consideration of the sum of two hundred dollars ($200), to him paid by J. L. Jones, of Montgomery county, Missouri, bargained, sold, assigned and transferred, and by these presents do bargain, sell, transfer and assign unto the said J. L. Jones all my right, title, interest and claim in and to the estate of my aunt, the late Julia A. Dearing, of Jonesburg, Montgomery county, Missouri, which said estate is now in process of administration in the probate court of Montgomery county, Missouri. The said interest hereby and herein bargained, sold and transferred to said J. L. Jones to include all my right, title, claim and interest in and to all the property, of any kind and description whatsoever, belonging to said estate; and do hereby guarantee the title to the claim hereby assigned and transferred to be free and clear of any incumbrance, liens or debts by me made, and that the same is free

and clear of any claims, liens or incumbrances. Witness my hand and seal this twenty-eighth day of August, 1886.

"GALVESTON, TEXAS, September, 7, '86.

"P. H. JONES. [Seal.]"

That thereafter the foregoing assignment was indorsed, to wit: "This claim having been purchased by me for Juliet A. Jones as her agent, and with her money, the same is hereby formally transferred to her.

"J. L. JONES."

And also to-wit:

"$397.46 1-3. Received of J. L. Jones, executor of the estate of Julia A. Dearing, deceased, the sum of three hundred and ninety-seven dollars and forty-six and one third cents ($397.46 1-3) in full of the amount of the interest of P. H. Jones in said estate as legatee under the will of said deceased, as appears by the final settlement of said estate by said executor, the interest of said P. H. Jones having been transferred to me this March 11, 1890.      JULIET A. JONES."

The assignment of the relator was made to the executor after some correspondence between them. The letters were not produced at the trial. The relator, in substance, testified that he was notified that he was one of fifteen legatees under the will of Julia A. Dearing; that the executor, J. L. Jones, wrote to the relator that the estate in his hands consisted of a note for $5,000, with interest, which would not be due until 1890, and a few personal effects of small value, and inclosing an advertisement of sale of the latter; that the relator thereupon offered to sell his share in the estate to the executor for $275; that the executor replied: "There were so many bills being probated against the estate that, if any of the heirs wanted a settlement immediately, he would have to put up the $5,000 note at auc-

tion and sell it to the highest bidder, and, not knowing what it would bring, he would risk $200 for my interest.'' The relator states that, believing these statements, he agreed to take $200 for his share, and influenced his sisters to do the same; that the executor sent his private check for $200, less discount, on a Missouri bank to the relator; that at the time he did not know the executor was one of the makers of the note, but was under the impression that the executor's father, who then was dead and his estate unsettled, was the maker; that he did not know what interest was due on the note, nor how old it was; that he would not have sold, if he had known he could have gotten the cash in full for his interest in the note; that he sold, because the executor had stated that ''he would have to sell the note, if any of the heirs wanted settlement before it became due, and did not know what it would bring.''

The executor testified that he wrote the relator ''there was not money enough on hand to pay the bills;'' that he did not write that ''so many bills were coming in that there would not be money enough to pay them, unless the note was sold;'' that he mailed a copy of the inventory to all the non-resident heirs, and gave them all the information in his possession as to the condition and value of the estate; that the relator wrote back a proposition to sell; that he did not sell the note because a majority of the heirs objected; that he took the assignment in his own name, because he was attending to all the business of his mother (the transferee), and often made contracts for her in his name; that he asked his attorney to draw up the form of the assignment, did not instruct him to make it out in witness' name, and supposed he did so, because he had been in the habit of drawing other contracts in witness' name; that he submitted the relator's proposition to sell to his mother, who, after consultation, decided to

accept it and give witness the money; and that his connection with the matter was simply as agent of his mother, which he disclosed to the relator.

The parties agreed as to the following facts: That the inventory of the executor showed no real estate, certain personal effects, which brought in on sale $43.93; cash, $3.25; one note, $20, interest, $4.20, and note $5,000, dated January 1, 1884, due January 1, 1890, at five per cent. simple interest, interest to date of inventory, $468.78; that on the first annual settlement on June 7, 1887, the executor charged himself with costs and sale of personal effects, $47.18, and was allowed credits of $30.75, leaving balance, $16.43, in his hands, which was approved; that, on the second annual settlement, he charged himself with said balance and notes and interest, not charged in first annual settlement, total $5,487.95, and was allowed credits of $22.35, leaving balance $5,482.03; that, on final settlement (March 10, 1890), he charged himself with said balance, and amount of error in calculation of interest in previous settlement, $1,101.86, making total of $6,583.89, and was allowed as credits $621.94, leaving balance $5,961.95, and that said last credits included all debts to wit, $165.14, which had been allowed, and that the taxes paid were $105.01; that said final settlement was approved. There was an order of distribution of said balance of $5,961.95, wherein the amount adjudged to the relator was $347.46, and a similar amount was adjudged to the other legatees on March 10, 1890, and that a motion to set the same aside was filed by the executor, which motion was overruled.

The appellant requested, and the court refused, the following instructions: "1. The court sitting as a jury declares the law to be that the assignment to J. L. Jones, the executor of Julia A. Dearing, deceased, was in violation of law, against public policy, and is pro-

hibited by the rules of equity, and conferred no rights upon him as against the plaintiff in this action, and that said J. L. Jones was equally disabled by law from acquiring any rights under said assignment for any third person as agent of such third person, and no evidence in support of said assignment, or for the purpose of proving such agency, can be considered.

"2. The court declares the law to be that, the assignment offered in evidence being to J. L. Jones in his own name and for his own behalf and under seal, no evidence for the purpose of showing that said assignment was for the benefit of a third person not named therein, and that said J. L. Jones was agent of such third person in obtaining such assignment, can be considered.

"3. The court declares the law to be that, the assignment offered in evidence having been made before the final settlement in the probate court and judgment and order of distribution thereon, the rights, if any, of any assignee thereunder are merged and extinguished in said judgment, and failure of the defendant, J. L. Jones, to pay to the relator, the distributee in such judgment, in accordance with the order of the probate court is such a breach of the bond sued on as entitled plaintiff to recover."

Thereupon the court gave judgment for the defendants. The appellant moved for new trial on the grounds embodied in his instructions, which motion was overruled. He thereupon moved for judgment *non obstante veredicto*, which motion was overruled; whereupon he appealed.

The question in this case is, whether or not the assignment by relator of his share of the estate in the hands of J. L. Jones, executor, made under seal to said executor, and by him transferred to Juliet A. Jones, and by her receipted for after final settlement, consti-

tutes a defense to this action for the amount adjudged to be due the relator in the order of distribution of said estate.

*First*, as to the effect of the order of distribution. It is well settled in this state that the control of probate courts is limited to a devolution of estates to the parties entitled by devise or heirship, and that it has no power to pass upon the rights or claims of third persons against the heirs, legatees or devisees of the estate in course of administration, and no power to substitute such persons in the place and stead of the representatives in blood or by will of the deceased owner, except by consent. The jurisdiction to settle disputed rights and conflicting claims of ownership between such persons and such heirs or distributees of the deceased is vested in the courts of general jurisdiction under proper proceedings. *Johnson v. Jones*, 47 Mo. App. 237. The result is that, if the assignment executed as above stated vested any right in Juliet A. Jones, the transferee thereof, she was not concluded from asserting the same by reason of the order of distribution, adjudging the subject matter of the assignment in favor of relator. Nor is the executor precluded in this cause from relying on his payment of said share to said Juliet A. Jones, provided it shall appear that he was permitted by law to engage in the transaction of purchase, as shown in this record, of the share of relator in said estate. This narrows the question to a single inquiry: Can an executor, on his own behalf, or as agent of another, purchase the interest of a legatee in the estate for a sum which turns out to be about one half of its value, even if it be conceded that there was no actual fraud in the purchase?

As to the first alternative, *i. e.*, the purchase for himself, the question has been so often answered in the negative that it will not bear further discussion.

*Thornton v. Irwin*, 43 Mo. 153, 603; *Boardman v. Florez*, 37 Mo. 559, 562; *Davoue v. Fanning*, 2 Johns. Ch. 252; *Ex parte Bennett*, 10 Vesey, 385; *Bent v. Priest*, 86 Mo. 475; *Landis v. Saxton*, 89 Mo. 375; *Michoud v. Girod*, 4 How. (U. S.) 503; *Patterson v. Booth*, 103 Mo. 413. In the last case *supra* it was said: "Guardians and other trustees have no right to deal with the trust property for their own benefit. All such transactions, though not always void, are voidable at the option of the beneficiary." This case affirms *Thornton v. Irwin*, *supra*, wherein Judge BLISS discussed the doctrine in all its limitations, and, upon full review of the authorities, concluded as follows: "I have referred more fully to those cases, because counsel dwelt upon the fact, as important, that there was no actual fraud in the case before us. There is, it is true, no evidence of fraud in fact. * * * It is analogous to the statute of frauds, which invalidates transactions often very innocent. The disability is intended to lift the trustee above temptation; to induce him—to compel him, rather—as far as possible, instead of planning sales to benefit himself, instead of to that end arranging them either as to time or the circumstances surrounding them— instead of studying to conceal material facts, to look only to the interests of the person for whom he acts. That person might be wholly unable to show actual fraud on the part of his trustee. He is not required to do it."

As to the second alternative in the inquiry, *i. e.*, whether such executor can buy as the agent of another. In discussing this, it must be borne in mind that the trustee by virtue of his office has superior knowledge as to the status and outcome of the property in his hands, and in many cases occupies also a fiduciary relation to the *cestui que trust*. For these reasons any contract between them would be infected with an ele-

ment of advantage on the part of one over the other. Such considerations, and the policy of the law compelling a trusteee to act for the benefit of the parties represented by him, created the rule that such contracts, when made to his detriment, are non-enforceable against the beneficiary. Executors are the trustees as well as agents of the distributees of the estate, and are clearly within the principle interdicting dealings on the part of trustees with the trust estate, or fiduciary agents with their principals. It is also true that the same reasons, which support the rule against such transactions, when had for the benefit of the trustee, subsist in full vigor when the trustee undertakes to make a contract for another. The same advantages, which the trustee possesses by virtue of his relation to the estate in making a trade for himself, are necessarily at hand when he makes the trade for another. Under the principle, therefore, that the reason of the law is its life, and that the same causes must produce the same effects, it follows that the rule must be identical, whether the trustee buys the estate, or deals with his beneficiary, for his own advantage or the advantage of another. This is sustained in *Ex parte Bennett*, 10 Vesey, 385. In that case the solicitor of the commissioner in bankruptcy employed a man to bid at the sale for a third party. It was held that neither the commissioner nor his solicitor could buy for another, and that the fact that the solicitor, though refusing to buy himself for the third party, had requested another to bid for him, rendered the sale voidable, although it was conceded that the transaction was free from any taint of fraud. Lord Eldon states the principle as follows: "The ground is that, though in the particular case there may be the most satisfactory evidence that the transaction amounts to no more than that the general interests of justice require, that the solicitor is not per-

mitted to buy for himself or for another as in several cases the powers of the court would not be equal to protect it against deception, from the impossibility of knowing the truth in every case. That in truth is the principle, on which courts of equity have held that trustees shall not buy. I mention it, as Lord Rosslyn said more than once that to affect the sale the trustee must make an advantage. That is not my opinion. The principle is deeper, viz., that, if a trustee can buy in an honest case, he may in a case having that appearance, but which from the infirmity of human testimony may be grossly otherwise."

These conclusions demonstrate that the trial court erred in its judgment herein. The assignment to respondent was no bar to this suit. Nor was it necessary to tender him the price paid therefor, before suing for the legacy due appellant. The legacy being in excess of what had been paid for the assignment, credit could have been given to the executor for the latter sum on a recovery of the legacy. In the case of *Girard v. Car Wheel Co.*, 46 Mo. App. 79, 105, 106, the rule is stated as follows: "It is not the law that a party, who has been induced by the fraud of the other party to release his right of action against the latter, must restore the consideration which he has received for the giving of the release, in order to be entitled to set up the fraud in avoidance of the release in an action upon the cause of action thus released. *Railroad v. Lewis*, 109 Ill. 120. It is true as a general propositon of law that one who is induced by fraud to enter into a contract with another, must, within a reasonable time after discovering the fraud, notify the other party of its rescission and restore to him whatever consideration he has received under it. but he is not bound to restore to the other party what he has received under it, where the other party is indebted to him in a larger amount.

It is plain from the refusal of appellant's first instruction that the court was of opinion that proof of fraud in fact was material in this case.   This was error. Wherefore the judgment is reversed and the cause remanded for new trial, when the question, whether the suit for avoidance of the asssignment was seasonably brought by appellant, may be determined.   Judge ROMBAUER concurs.   Judge BIGGS concurs in the result, but adheres to the views expressed in his dissenting opinion in *Girard v. St. Louis Car Wheel Co., supra.*

### ON MOTION FOR REHEARING.

ROMBAUER, P. J.—The motion filed in this case complains that the opinion of the court is inconsistent. It complains that the opinion treats the assignment, made by the relator to the executor, of the relator's distributive share in the estate of Julia A. Dearing, both as void and as voidable, whereas under the decisions in this state such transactions are voidable only. This complaint is ill founded.   The language used in the opinion is used in view of the conceded facts, and must be so limited.   The trend of decisions in this state is, that transactions of this character are *prima facie* voidable without proof of fraud in fact, and that it devolves upon the trustee who seeks to uphold them to show that they were fair and for full value.   In the case last put the transaction would be in effect equivalent to an anticipated payment, which is not prohibited by either public policy or equitable considerations.

A calculation from data appearing in the record shows that the relator's interest, at the date of its sale, deducting debts of the estate and executor's commissolsions, was of the value of $335.   Touching the vency of the note for $5,000 (which was the only

substantial asset), there is no question.   The executor was a maker of that note, and, as he is likewise solvent, the note under our statute was assets absolutely available in his hands.   These facts of themselves rendered the transaction voidable at relator's instance.

It further appears by the record in this case that the money was not paid to Juliet A. Jones by the executor until after final settlement.   It is claimed that at the final settlement the relator challenged the validity of his assignment.   If such is the fact, the relator was guilty of no laches which would preclude his recovery. *Bechtold v. Read*, 22 Atl. Rep. 1085.

Upon these facts being shown, the relator would be entitled to judgment upon the bond, and the measure of his damages would be $197.46, less interest thereon at six per cent. per annum from August 28, 1886, to January 10, 1890, equal to $42.46, that is to say, $155, and six per cent. interest thereon from the date last named to date of judgment.

We make these suggestions to save the parties the cost of another trial, which, it would seem, must inevitably lead to the result above stated.   The motion for rehearing is overruled.   All the judges concur.

ON MOTION TO CERTIFY CAUSE.

BIGGS, J.—The respondents ask that the above cause be certified to the supreme court.   They claim that the original opinion, as well as that delivered by Judge ROMBAUER, on motion for rehearing, are in conflict with controlling decisions of the supreme court.

I concurred in the result reached in the original opinion, as I understood it to hold that under the evidence the assignment in question was voidable and not void.   I was of the opinion, however, that the validity of the assignment could not be tried in an

action at law,—that, until it was set aside by a court of equity, it stood as a bar to the prosecution of the present action. *Blair v. Railroad*, 89 Mo. 383. But, as the disposition then made of the case was not final, I refrained from certifying it.

In the opinion rendered by Judge ROMBAUER it was expressly stated, and so decided, that the assignment ought to be rescinded, unless the claim *was sold for its full value*. This seems to me to be opposed to the decision of the supreme court in the case of *Sallee v. Chandler*, 26 Mo. 124, and also to the reasoning of the same court in the late case of *Kirschner v. Kirschner*, 20 S. W. Rep. 791. The motion to certify the case to the supreme court will, therefore, be sustained.

The clerk of this court is ordered to transmit to the supreme court the original papers on file, together with a full and complete transcript of the proceedings in this court. Judge BOND concurs in certifying the case. Judge ROMBAUER is absent.