RICHARDS, *Appellant*, v. PITTS *et al.*

Division One, November 12, 1894.

1. **Trustee Purchasing Trust Property:** BURDEN OF PROOF. A trustee may purchase the trust property of the beneficiary or even accept a benefit from him but the transaction must be fair and beyond suspicion; and, in general, it devolves upon the trustee to show the fairness of the transaction and that he made to the beneficiary a full disclosure of all the knowledge possessed by him concerning the property in question.

2. ———: ———: EXECUTORS. Defendants were the executors of a will giving certain property to plaintiff. After the final settlement one of the defendants procured plaintiff, who was illiterate, sixty-three years old and a nonresident of the state, to assign his interest in the estate for greatly less than its value, stating to him at the time that they needed the assignment to clear up the title to the land because plaintiff's name was mentioned in the will, and that it would be a long time before the estate was closed up and at the same time concealing the fact that there were $1,394 in the executor's hands then due plaintiff. *Held,* that the confidential relation between plaintiffs and defendants was abused by the latter and the assignment should be set aside.

*Appeal from Polk Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED AND REMANDED.

*J. W. Ross* and *T. G. Rechow* for appellant.

(1) An administrator can not become the purchaser of the trust property. *Michaud v. Girad,* 11 U. S. Rep. [Lawyer's Ed.], 92; 2 Story's Equity [3 Ed.], sec. 1261; 1 Perry on Trusts [2 Ed.], sec. 430; 2 Smith's Leading Cases [Hare & Wallace, notes], pp. 92, 714; 1 *Ibid.,* p. 208; *Thornton v. Irwin,* 43 Mo. 163; *Grumley v. Webb,* 44 Mo. 444; *Rae v. Copelin,* 47 Mo. 76; *Lais*

*v. Stembery*, 50 Mo. 124. (2) A trustee purchasing the estate from *cestui que trust* or heir must pay a full, fair and adequate consideration. *Hickman v. Stewart*, 69 Tex. 255; *Waldrop v. Leaman*, 30 S. C. 428; *Wilson v. Brookshire*, 126 Ind. 497; *Wadsworth v. Adams*, 138 U. S. 380. (3) The declarations of Maridy Richards made to W. D. Pitts and N. F. McDonald were inadmissible. 1 Jarman on Wills [5 Am. Ed.], 708; 6 Wait's Actions and Defenses, 387, and authorities there cited. (4) The advice given to defendants by Allen and Jones was inadmissible.

*A. A. Underwood* and *John S. Haymes* for respondents.

(1) Appellant having sued claiming title under the will and that he was the victim of an actual fraud can not now break away from his own pleadings, and recover on the theory, if well founded, that he is an heir nor that there is a constructive trust. *Weil v. Posten*, 77 Mo. 284; *Waldhier v. Han. & St. J. Railroad*, 71 Mo. 514. (2) But in this case appellant held no trust relation at time of conveyance. After their final settlement they were no longer executors or trustees. *Caldwell v. Lockridge*, 9 Mo. 363; *Collins v. Stephinson*, 12 Mo. 178; *Littleton v. Addington*, 59 Mo. 275. (3) In equity cases all evidence should be omitted unless very clearly incompetent. *Powell v. Adams*, 98 Mo. 598. The evidence objected to was competent. Schouler on Wills, p. 603, sec. 579, and p. 926, sec. 598. But if incompetent it will not work a reversal if there is other evidence to sustain the judgment. *Davis v. Kline*, 96 Mo. 401.

BLACK, P. J.—Reuben Richards brought this suit against William D. Pitts and John Overshiner to set aside two instruments, whereby Reuben Richards trans-

ferred all of his interest in his brother's estate to Pitts. The undisputed facts are to the following effect:

Maridy Richards, of Polk county, this state, died testate on the twenty-fifth of January, 1885. He left an estate consisting of two hundred and sixty acres of land, worth $1,500, a house and lot in the town of Bolivar, worth from $800 to $1,200, and also considerable personal property. He died without issue, but had several brothers and sisters, the plaintiff being one of them. He had raised John Overshiner and Eliza, the wife of William D. Pitts. By his will he devised one half of his property, real and personal, to his wife, Mary Richards, absolutely, and gave her the use of the other half during her life. He disposed of the half set apart for his wife for life as follows:

"In consideration of and for the reason that John Overshiner and Eliza Pitts, wife of William D. Pitts, have heretofore rendered to myself and my wife valuable services in the way of taking care of us, and assisting us greatly in helping to make and accumulate such property as we have, and believing and desiring that Reuben Richards, my brother, will hereafter help take care of us in our old age, I will and bequeath to the said John Overshiner, Eliza Pitts and Reuben Richards, equally the other half of all my real estate and personal property."

John Overshiner and William D. Pitts were the duly appointed and qualified executors of the will. According to the record before us they made final settlement of the Richards estate in February, 1887. That settlement shows there was then due the estate $8,364, the one half of which belonged to the widow, Mary Richards, and she was entitled to the use of the other half during her life.

Mary Richards died, testate, the twenty-fourth of February, 1888. Overshiner and Pitts were the duly

nominated executors of her will, and they qualified and duly administered upon her estate. It does not appear whether they continued to hold the one half of the $8,364, that is to say, $4,182, as executors of the will of Maridy Richards, or whether they held it as executors of the will of Mary Richards, but they held it in one or the other of these capacities.

On the twenty-sixth of March, 1888, a month only after the death of Mary Richards, the plaintiff executed two instruments, by one of which he conveyed his one sixth interest in the land to Pitts for the consideration of $100, and by the other he released all of his interest in his brother's estate to Pitts for the consideration of $150. These instruments were executed at El Paso, in the state of Texas, and were procured by Pitts for himself and for Overshiner. These are the instruments which plaintiff seeks to set aside by this suit, and he asks for an accounting also.

The principle of law is of old standing and well established that a trustee can not deal with the trust estate for his personal profit, and the principle applies to executors and administrators. But there is a vast difference between those cases where one occupying the position of a trustee deals with the trust property without the consent of the beneficiary, and those where he deals directly with the beneficiary. In the former class of cases the transactions are voidable, as a matter of law, without any other or further showing; but in the latter class the transactions are not necessarily voidable. A trustee may purchase the trust property of the beneficiary, or even accept a benefit from him, but the transaction must be fair and beyond suspicion; and in general it devolves upon the trustee to show that the transaction was fair and that he made to the beneficiary a full disclosure of all the knowledge possessed by him concerning the property. 1 Perry on

Trusts [4 Ed.], section 428; 2 Pomeroy's Equity Jurisprudence, section 958.   The case in hand is that of an executor purchasing the interest of an adult devisee in the property of the estate, real and personal; and there can be no reason why the transaction should not stand, if it was fair and there was no fraud, concealment or deception practiced by Pitts.   But if he took advantage of the plaintiff by the concealment of facts which he had acquired as such executor, then the transaction can not stand.

Though not so in terms stated, we infer from the evidence that the plaintiff is, and always has been, an unmarried man.   He has resided at El Paso, in the state of Texas, since 1863, with the exception of a few months in 1884.   In the early part of that year he came to this state, intending to live here with his brother, the testator.   He soon became dissatisfied and determined to, and did, return to El Paso.   Before leaving he said to several persons he could not get along with the old people, that he did not want their money, and that he would go back to his friends.   Other evidence shows that the plaintiff was about sixty-three years of age when he executed the instrument in question, unable to read or write, and evidently a man of little or no business capacity.

The plaintiff, by way of a deposition taken about one year before the trial, testified:   "Pitts came to my adobe house late one evening.   He informed me of the death of my brother.   He said my brother's wife was then living with him.   He said he had $250 for me, but I must sign some papers to get the money.   He said if I got sick and hard up to write to him and he would send me more; that he had charge of the estate, but it had not been wound up, and he did not know how much I would be entitled to; said there was some money on hand, but he could not tell at that time how much

there was.   He said he guessed it would take a long time to settle up the estate.   I did not know anything about the business, and trusted to him.   The next day we went to the county clerk's office and fixed up some papers.   Do not remember what they were.   Can not say whether they were read to me or not.   Pitts said he just wanted them ·to make him safe.   Some one wrote my name and I made my mark.   He left that evening.''

The defendant Pitts testified on the trial as follows: ''I told the plaintiff that his brother and his brother's wife were both dead.   He asked me what had become of the farm, and I said 'we still have it.'   He said, 'Why don't you sell it and come to this country where it is healthy.'   I said, 'Uncle Rube, we can't get up an abstract and make a chain of title without an assignment from you, as your name is in the will.'   He said, 'But I am willing to do anything for you I can; I don't claim anything at all.'   I then said to him, 'if you are willing to do that, we will go up to El Paso and make an assignment of the personal and real property so we can make a chain of title that will sell better than without it.'   The next morning he and I went to El Paso.   I had left my overcoat and some things up there; he and I went into my room there and I read a copy of the will to him.   I said to him, 'Uncle Rube, I have made up my mind to leave $250 with you if you make the assignment.'   He said, 'I will be very glad for the money, but I don't claim anything at all.'   He and I went to the clerk's office, where I got the papers out of my pocket, and I told the clerk my business. The clerk asked Richards if he understood the business, if he understood he was assigning away all his interest in his brother's estate, and Richard said he understood it, that he did not claim anything.   The clerk asked me what the personal property amounted

to, and I told him I did not know just the amount, but several thousand dollars. I made the consideration $100 for the land and $150 for the personal property."

The testimony of this witness is to the further effect that he had been informed that the plaintiff had forfeited his interest in the estate because he did not remain with the testator. He says again that he got the deed and release so as to enable him to furnish a perfect abstract in case he and Overshiner desired to trade or sell the property. Pitts had the deed and release prepared before he went to Texas, and he admits that he got them signed for Overshiner as well as for himself.

Guided by the principles of law before stated, it is very clear the deed and release in question can not stand the test. In the first place the evidence of Mr. Pitts is, in its entire scope, an excuse for, rather than a justification of, the transaction. He says he had been advised that the plaintiff had no interest in the estate of Maridy Richards because plaintiff did not live with and take care of the testator. According to his evidence he obtained these instruments for the mere purpose of making the title perfect upon the face of the records, and paid the $250 to plaintiff rather as a matter of charity. Such was the state of affairs presented to the plaintiff to induce him to execute the deed and release. It was an untrue state of affairs brought forward by Pitts; for there is nothing in the will of Maridy Richards which makes the devise to plaintiff rest upon the condition that plaintiff should remain with and take care of his brother. It is, therefore, clear that plaintiff executed these instruments under a misconception of his rights. But it will be said Pitts was also misled as to the legal effect of the will. Be this as it may, the fact remains that the plaintiff did not know what his rights were, and there was no fair opportunity afforded

him to take advice. Pitts did not even take the copy of the will with him to the clerk's office, but left the same at his lodging place.

But there is much more in the case. While there is a direct conflict in the evidence of the two parties in interest as to whether Pitts reported the death of Mary Richards, it is clear Pitts did not give plaintiff a true account of the affairs of the estate. He says the clerk, before whom these instruments were acknowledged, asked him what the personal property amounted to, and he replied that he did not know, but several thousand dollars. Now Pitts knew when making this statement that there was then on hand and for distribution, $4,182 in cash, one third of which, to wit, $1,394, was then due to the plaintiff. Besides this we are satisfied Pitts informed the plaintiff it would be a long time before the estate could be settled up, when the truth was the estate had been settled, and Pitts and Overshiner held $1,394 which should have been paid to plaintiff. This money and the one sixth of the land they obtained under the misrepresentation that the estate could not be settled for a long time and by concealing the fact that there was then due to the plaintiff $1,394. Such a transaction between executors and a devisee can not stand. The law will not permit such a confidential relation to be thus abused.

But it is agreed there was no trust relation existing between the plaintiff and the defendants, when the transaction in question was consummated, because the defendants had before that date made final settlement of the Maridy Richards estate. According to the record before us they made final settlement of that estate in February, 1887, the settlement showing a balance of $8,364 in their hands. By their inventory of the Mary Richards estate they charged themselves with personal

property amounting to $9,929, the one half of which, it is therein stated, belonged to the estate of Mary Richards. From the case as presented to us by the record we are left in doubt whether the defendants still held the $8,364 as executors of the will of Maridy Richards or as executors of the will of Mary Richards; but it is immaterial in which capacity they held it. In either event they held it in their trust capacity for the benefit of the devisees, and as between them and the plaintiff, one of the devisees, the trust relation did not terminate until they paid the money to the plaintiff or acquired from him a valid acquittance.

The judgment in this case is reversed and the cause remanded to the circuit court; and that court is hereby directed to enter up a decree setting aside the deed and release in question and also the subsequent one from Pitts to Overshiner, and to give judgment for the plaintiff against both defendants for $1,394, less the $250 paid by Pitts, with interest on the balance from the commencement of this suit at six per cent. per annum to date of final judgment. All concur.