MARY M. MURRY, Respondent, v. MAGGIE R. KING, Executrix of Nathan King, Deceased, Appellant.

Kansas City Court of Appeals, February 13, 1911.

1. **DEEDS OF TRUST: Sale: Purchase by Trustee or Cestue que Trust.** Where a deed conveyed the legal title of land to plaintiff as trustee, and vested the beneficial estate in her and her three children as tenants in common, and where subsequently one of the sons purchased his brother's interest, and plaintiff purchased the interest of the other son, the result of these transactions left the legal title to the land vested in plaintiff with the entire equitable estate vested in plaintiff and her son as tenants in common, since one *cestui que trust* may convey his interest to another, and since, while the law always looks with suspicion on a purchase by a trustee of a beneficial interest in

the property, such a transaction will be sustained where there is no suggestion of fraud, and no complaint was ever made by the vendor.

2. ———: **Proceeds.** Where a trustee who was also tenant in common of the beneficiary estate, with her son, sold the farm, which was the subject of the trust, the entire proceeds being received and retained by the son, who used his mother's share of the money as her agent with her knowledge and consent for her benefit, the radical changes wrought by these transactions were the exchange of places as trustee; the change of the subject of the trust from the farm to the money of the mother; and the fact that the trust was no longer evidenced and controlled by the original deed under which the farm was conveyed in trust to the mother, but was to be controlled by the terms of the oral agreement between mother and son at the time the son, as trustee, received the fund.

3. ———: **Parole Trust of Personalty: Parole Proof.** Although there is no direct evidence of a trust agreement, where the circumstances tending to show the existence of a trust are definite and certain, respecting the subject matter, parties, and purpose, and are clear and convincing to the mind of the court, a parole trust of personal property may be created, and its existence proved by parole testimony.

4. **Pleadings: Proof: Variance.** There is substantial conformity between allegation and proof where the averment that the farm "was sold by said son acting for himself and plaintiff," and that he retained the entire proceeds of sale, is shown by the evidence to be literally true, although plaintiff was the trustee, and theoretically made the sale by a deed in consummation of the transaction conducted by her son as her agent for their common benefit.

5. ———: ———. In an action by the mother to enforce a parole trust of personalty arising from the proceeds of the sale of the land which she had held as trustee, and the beneficial estate of which had been vested in herself and son, as tenants in common, an averment that plaintiff and her son were joint owners and tenants in common of the land, correctly stated their relationship to each other and the extent of their respective interests in the proceeds of the land.

6. ———: **Beneficiary: Estate of Trustee.** Where the son received the proceeds from the sale of land through the medium of the active co-operation of the mother, who was trustee of the land, and in a manner to show that plaintiff, the mother, as trustee, was disposing of the proceeds in the way prescribed by the trust, and was paying to the son his beneficial part, and, in addition, making him the custodian and trustee of her own

part, plaintiff can maintian an action in her individual capacity as beneficiary of the trust fund against the estate of the trustee.

7. **DEEDS OF TRUST:** Statute of Limitations: Continuing Trust. Where the evidence clearly shows that a continuing parole trust was created, neither laches nor limitations would begin to run against it until the death of one of the parties; or until there was a demand for the fund by the *cestui que trust* and a repudiation by the trustee.

Appeal from Boone Circuit Court.—*Hon. N. D. Thurmond*, Judge.

AFFIRMED.

*N. T. Gentry* for appellant.

*Charles J. Walker* and *Harris & Hay* for respondent.

JOHNSON, J.—This is an action in equity instituted December 11, 1909, in the circuit court of Boone county by the beneficiary of a trust against the estate of the trustee to recover the fund. The petition is in two counts. The trial resulted in a judgment for plaintiff on the first count in the sum of $4607.50, and for defendant on the second count. Since defendant alone appealed it is not necessary to refer further to that part of the record dealing with the cause of action pleaded in the second count.

Plaintiff was the mother and defendant, executrix, the wife of Nathan King who died testate in Boone county February 8, 1909. In 1865 plaintiff, then the widow of Erastus King, deceased, and the mother of three minor sons—William, John and Nathan—received from her brother John A. Glasgow the gift of a farm of 480 acres in Boone county. The deed conveyed the legal title to her as trustee and the beneficial estate to her and her three children as tenants in common. Further, the deed provided "that said trustee may, whenever in her judgment it will be advantageous to those

interested therein sell said lands, privately or publicly, for such price as she may think adequate and sufficient and convey the same, or any part thereof by apt and proper conveyances and that whenever any such sales may be made, the proceeds shall be divided equally between said Mary M. and her three children." In 1874 Nathan purchased the interest of his brother William and in 1875 plaintiff purchased the interest of her son John.

Thereafter plaintiff and Nathan were the sole and equal owners of the beneficial estate. From 1865 to 1874 plaintiff and her children occupied the farm as a homestead. In the latter year Nathan married the defendant and continued to live on the farm, and plaintiff intermarried with Andrew Murry and resided with him on his farm in Callaway county until 1876 when he died and plaintiff returned to the old homestead and there lived with Nathan and his family until 1903 when Nathan sold and plaintiff conveyed the farm for the sum of $16,000. The purchase price was paid by drafts payable to the order of plaintiff and Nathan. Both indorsed the drafts but the entire proceeds were received and retained by him.

Afterward Nathan bought a farm, paid for it out of the money in his hands belonging to him and plaintiff, and later sold it realizing a net profit of $9000. He also bought a farm for plaintiff for which he paid $2932.50. Plaintiff remained a member of Nathan's family until his death and throughout the long period of their constant association the relations between them were most intimate and confidential. Plaintiff permitted her son to use their land and money as his own. He did not account to her for rents and profits, but he supported her in a manner befitting her station in life. From September, 1907, to August, 1908, and from October, 1908, to June, 1909, plaintiff's mental faculties were so impaired that she resided in the State Hospital for the Insane at Fulton, but she recovered and now is

in her right mind. She is 79 years old and is enfeebled. Her expenses at the hospital were paid by her son. A niece of plaintiff testified, that about two years before Nathan's death she had a conversation with him in which she said: "Nathan, you have been managing Aunt Mollie's business for her all these years. She is getting old and I want to know, you seem to have bought the place in Columbia, you say it is in your own name and I want to ask you about Aunt Mollie. Suppose you should die, what would become of her in her old age?" Nathan replied, 'Cousin Bettie, don't you worry a minute. When I am dead my books will show where every dollar of my mother's money is."

There was no written trust agreement executed by Nathan and it transpires he did not keep book accounts with his mother. It is not disputed that he received her share of the proceeds of the sale of the homestead and there is no suggestion in the evidence of any agreement or understanding between him and his mother that he was not to handle her money for her use and benefit as her agent. His use of the money was with her knowledge and consent and we think it was mutually understood he was acting as her agent and trustee. At no time did he do or say anything indicative of intent to repudiate his trusteeship and to claim her money as . his own.

Among the findings of fact made by the circuit court are the following:

"The court further finds that plaintiff is entitled to have and recover of the defendant the sum of $8400, the amount received by said Nathan King, deceased, for plaintiff's interest in said 480 acres of land sold to Ira F. Hendricks, less the sum of $210 paid out by him as plaintiff's share of the commissions paid to said F. W. Smith and less the sum of $2932.50 paid by said Nathan King to John W. Hamilton for said forty acre tract of land and less the $650 paid out and expended by said Nathan King for the support, maintenance and benefit

of the plaintiff, including her expenses at the hospital and the taxes paid on said forty acres of land, leaving a net balance which plaintiff is entitled to recover of $4607.50.

The court further finds that plaintiff is entitled to have and recover of the defendant, interest on said sum of $4607.50 so held by Nathan King, deceased, at the time of his death, at the rate of six per cent per annum from February 28, 1903, to the date of the judgment herein, amounting to the sum of $1932, making a total sum of $6539.50 under the first count of her petition; and that plaintiff take nothing by the second count of her petition."

There are other facts in the record but those stated control the disposition of the case.

As stated the deed from Glasgow to plaintiff vested the legal title of the homestead in her with the beneficial interest in her and her three children. The subsequent purchase by Nathan of the interest of one of his brothers was valid since the rule is well settled that one *cestui que trust* may sell and convey his interest to another. The purchase by plaintiff of another of the beneficial interests likewise was valid, notwithstanding she sustained towards the trust the dual relation of trustee and *cestui que trust*. No complaint of the transaction was ever made by the vendor; there is no suggestion of fraud and, while the law always looks with suspicion on the purchase by a trustee of a beneficial interest in the property, such transaction is not necessarily void and will be sustained even in a subsequent action brought by the vendor to set it aside where it clearly appears there was no fraud, no concealment by the trustee and no undue advantage taken by him. [Sallee v. Chandler, 26 Mo. 124; Richards v. Pitts, 124 Mo. 602.]

The result of these transactions left the legal title to the land vested in plaintiff with the entire equitable estate vested in plaintiff and Nathan as tenants in com-

.mon, and such was the situation of the parties in 1903
when they sold the land.

That sale was authorized by the express terms of
the trust deed and its legal effect was the equitable
conversion of the land into personalty.   It became the
duty of plaintiff under the mandate of her trust to di-
vide the proceeds of that sale equally between Nathan
and herself.   Practically that was·what she did though,
in fact, the whole transaction was conducted by Nathan
as her agent.   Not only did he receive his share but she
turned her share over to him under circumstances which
clearly evinced a mutual intent that he should take her
money not as a gift but as her agent or trustee to hold
and use it for her benefit.   The radical changes in their
relation wrought by this transaction were, first, the
exchange of places as trustee and, second, the subject of
the trust no longer was the farm but was her own money
and the trust no longer was evidenced and controlled
by the Glasgow deed but was to be controlled by the
terms of their oral agreement and mutual understanding
had at the time Nathan, as trustee, received this fund.

There is no direct evidence of such trust agree-
ment.   "A trust of personal property may be created
by parol and its existence proved by oral testimony.
Courts, however, do not permit such trusts to be es-
tablished by evidence of a vague or uncertaain charac-
ter.   The supporting testimony must be clear, explicit
and leave no room for a reasonable doubt that a trust
was intended.   There must be certainty as to subject-
matter, parties and purpose."   [Carroll v. Woods, 132
Mo. App. l. c. 501.]

"To constitute a trust there must be an explicit dec-
laration of trust, or circumstances which show beyond
reasonable doubt that a trust was intended to be cre-
ated."   [McKee v. Allen, 204 Mo. l. c. 685.]

The circumstances tending to show the existence
of a trust are definite and certain respecting the subject-
matter, parties and purpose and, to our minds, are most

clear and convincing. The son was an able business man, was dutiful to his mother, bound to her by the closest ties of consanguinity and family relationship. For years she allowed him to manage and enjoy the profits of their land and, in return, he supported her in a manner suited to her station and eloquent of filial affection. He was her prop in her days of mature vigor and in her senescent age she permitted him to sell their land and, as might be expected, turned her share over to him. He used some of that money for her benefit, some for their joint benefit and much for his own benefit but, to his honor, he always recognized his trusteeship and spoke no word suggestive of a purpose to wrong his aged and helpless mother by a denial of her claim upon him.

Having ascertained that there was a new trust created by parol at the time of the division of the proceeds of the land and that the subject of this trust was personalty we turn our attention to the propositions advanced by defendant for a reversal of the judgment.

First, it is argued the proof not only fails to conform to the petition but contradicts the cause of action pleaded. We find substantial conformity between allegation and proof. The averment that the farm was "sold by said King acting for himself and plaintiff" and that he received the entire proceeds of the sale is shown by the evidence to be literally true though plaintiff was the trustee and, theoretically, made the sale by a deed in consummation of the transaction conducted by her son as her agent for their common benefit. The averment that plaintiff and her son were joint owners and tenants in common of the land, so far as the cause of action pleaded is concerned correctly stated their relationship to each other and the nature and extent of their respective interests in the proceeds of the land. The fact that plaintiff also was the trustee and, as such, the owner of the legal title was wholly immaterial to the cause and is purely historical, since the present trust did not

arise until after there had been an equitable conver-sion of the land into personal property and her trus-teeship had been ended by the disposition of the pro-ceeds in obedience to the terms of the original trust.

Secondly, defendant contends that plaintiff can-not maintain this action for the reason that it is prose-cuted by her in her individual capacity and the only cause of action she could have would be one inuring to her in her representative capacity as trustee. That is a misconception of the nature of the cause of action pre-sented by the pleadings and evidence. If, in acting as the agent for the trustee in selling the land, Nathan had failed to account for the proceeds received by him and had converted them to his own use instead of paying them over to the trustee, there would be force in de-fendant's argument. But no such thing occurred. True, Nathan received the proceeds but they came to him through the medium of plaintiff's active co-operation and in a manner to show that plaintiff, as trustee, was disposing of them in the way prescribed by the trust and was paying to Nathan his beneficial part and, in addition, making him the custodian and trustee of her own part.

Finally defendant argues plaintiff's demand is stale and is barred by the Statute of Limitations. The evi-dence shows quite clearly that the parol trust contem-plated and intended that Nathan should keep and man-age his mother's property an indefinite time, and as long as his management was satisfactory to her. She was too old and feeble to attend to her own business, had been accustomed to rely on her son and, no doubt, they mutually understood and intended that their life-long relationship should continue to her death. It was a continuing trust they created and neither laches nor limitation would begin to run against it until the death of one of the parties or until there was a demand for

the fund by the *cestui que trust* and a repudiation of the trust by the trustee. There was no such demand or repudiation and, consequently, limitation did not begin to run until the death of Nathan.

The judgment is affirmed. All concur.