Sharon Kay FORESTER, Respondent-Plaintiff,

v.

Dorothy R. BELLVILLE, Appellant-Defendant.

No. 35222.

Missouri Court of Appeals, St. Louis District, Division Two.

July 9, 1974.

Motion for Rehearing or Transfer Denied Sept. 11, 1974.

policy on the life of Melvyn Forester. The judgment also denied to plaintiff any interest in another policy and although not specifically saying so thereby confirmed defendant Bellville's interest as the named beneficiary.[1] Melvyn Forester was the son of defendant Bellville and the husband of plaintiff. Defendant Northwestern Mutual Life Insurance Company was discharged after its interplea and deposit of the insurance proceeds into Court.[2]

Two policies of insurance were issued by Northwestern upon the life of Melvyn Forester, each for $5,000 face amount with a double indemnity provision for accidental death. The first policy was issued October 23, 1969. The second was issued January 9, 1970 and it is this policy to which the appeal relates. Each policy listed the "Direct beneficiary" as "Dorothy R. Bellville, Mother of the Insured." Melvyn Forester was shot and killed on November 18, 1971 while a customer in a restaurant in St. Louis County during the course of a holdup. He was not involved in the holdup and Northwestern has conceded throughout that the accidental death benefit is applicable. Plaintiff and Melvyn began dating in September or October of 1969. They announced their engagement in December 1969, were married in March 1970, and had a child in November 1970.

Aubuchon & Lavin, Jesse E. Bishop, St. Louis, for appellant-defendant.

Michael J. Yatkeman, Clayton, for Northwestern Mutual Life Ins. Co.

Louis Gilden, St. Louis, for respondent-plaintiff Sharon Kay Forester.

SMITH, Presiding Judge.

Defendant Bellville appeals from that portion of a judgment in an interpleader suit that decreed plaintiff Forester to be the lawful beneficiary of a life insurance

Plaintiff did not appeal the Court's finding that she had no interest in the policy issued in October 1969. She premises her right to recovery of the proceeds of the second policy upon two grounds: (1) contract and (2) trust.

■ The contract theory arises from the fact that on the same day that Mr. Manewal, Northwestern's agent, sold the second policy to Forester, he also sold a policy to plaintiff in which the designated benefi-

1. The pleadings, evidence, findings of fact, conclusions of law and decree make it apparent that the Court found for Mrs. Bellville as to one of the policies. We therefore deny her motion to remand for entry of a more definitive order.

2. Mrs. Bellville will hereinafter be referred to as defendant.

ciary was Forester, "fiance." Subsequent to the marriage plaintiff had the policy changed to reflect her married name and changed the description of the beneficiary from "fiance" to "husband." The only other evidence of a contract between Forester and plaintiff concerning the policies was the testimony of plaintiff to which a proper and continuing objection involving the Dead Man's Statute [3] was made. The "contract" upon which plaintiff sought recovery was between herself and Forester, who is dead. The Dead Man's Statute applies and neither we nor the trial court can consider plaintiff's testimony of an oral agreement between herself and Forester. Ables v. Ackley, 133 Mo.App. 594, 113 S. W. 698 (1908); Kerr v. Prudential Ins. Co., 238 Mo.App. 972, 194 S.W.2d 706 (1946). There is no competent evidence of a contract.

■ The general rule in Missouri is that "every person has an insurable interest in his own life and . . . he may insure it for the benefit of any person whom he sees fit to name as beneficiary." Walker v. General American Life Ins. Co., 141 S. W.2d 785 (Mo.1940) [4]; Service Life Ins. Co. v. Davis, 466 S.W.2d 190 (Mo. App.1971).

Plaintiff asserts that she is entitled to the proceeds of the second issued policy on the basis that Forester created an express trust in the proceeds for her benefit or alternatively that equity requires the imposition of a constructive trust for her benefit. The trial court made findings of fact and conclusions of law in determining that plaintiff was entitled to the proceeds of the second policy. Accepting, as we must, the determinations of credibility by the trial court, we treat as true the testimony which supports the Court's findings of fact, while retaining the authority to arrive at our own findings based upon that testimony.

The estate of decedent consisted only of a $200 automobile. After the marriage of plaintiff and decedent, the Northwestern agent talked to Forester about changing the beneficiary on his policies to his wife. Deceased told the agent "Mom will take care of that." No change was ever made. Premiums were paid from the joint account of plaintiff and Forester. Plaintiff was aware at least ten months before decedent's death that defendant was the named beneficiary. There was no evidence that defendant was aware that she was the designated beneficiary until after her son's death, and she denied she was so aware. In June 1971, in the presence of plaintiff, Forester told plaintiff's parents that if "anything ever happened to him he had $10,000 worth of insurance that would take care of Sharon [plaintiff] and the baby." Plaintiff's mother remembered decedent jokingly indicating that "Sharon would be a rich widow, he had taken care of that." The mother ". . . thought he felt confident he had everything taken care of." Following Forester's death and at about the time of the funeral, plaintiff, defendant, plaintiff's parents and another person were together. Plaintiff and her parents indicated that upon plaintiff telling defendant that she (defendant) was the beneficiary of the policies, defendant replied: ". . . don't worry, I will sign them over" or "there would not be any problem, she would sign it over to her." Defendant denied she was even aware of the existence of the policies prior to being advised by plaintiff after Forester's death. There was some evidence, never developed, that Forester had three policies on his life, one apparently taken out after the two in dispute. Defendant presented evidence that Forester had discussed his insurance with a friend and that Forester said his mother was the beneficiary of the two policies he had at that time. There was no testimony by plaintiff as to whether there was any other insurance on Forester's life of which she was beneficiary, although she did say there were no assets in his estate except the automobile.

3. Sec. 491.010 RSMo 1969, V.A.M.S.

■ An express trust in personalty may be created and proved by parol evidence through "express declarations and also by surrounding circumstances." Prudential Insurance Co. of America v. Gatewood, 317 S.W.2d 382 (Mo.1958). The intention of the creator of the trust is the paramount question, but the evidence of the trust must be clear and explicit leaving no room for a reasonable doubt that a trust was intended. Murry v. King, 153 Mo.App. 710, 135 S.W. 107 (1911). The words of the settlor must express a declaration and grant by him of an estate or interest to create a valid parol trust. Bank of Perryville v. Kutz, 276 S.W.2d 593 (Mo.App.1955). No particular words are required to establish a trust but the intent to create one "must be clearly expressed by words or conduct or both" and the evidence must be so cogent, clear and convincing as to dispel any doubt in the Court's mind. Gardner v. Bernard, 401 S. W.2d 415 (Mo.1966).

■ Accepting as true the evidence adduced by plaintiff we are unable to find it sufficient to support an express trust. There is no evidence at all that Forester ever declared the insurance proceeds to be in trust. There is no evidence when the trust was created, what constituted its res, or what enforceable duties were imposed. See Gardner v. Bernard, *supra*, [6–8]. Decedent's statement to the agent "Mom will take care of that" is not a clear expression and grant of a definite beneficial estate or interest to his wife. It is at most ambiguous. Nor can we conclude that the conversation with plaintiff's parents establishes the requisite intention to create a trust. The lack of definiteness in decedent's actions and statements is reflected in the trial court's finding that only one of the policies was subject to the trust although plaintiff's evidence related to both policies without distinction. Decedent's statement to plaintiff's parents pertained either to both policies together or to some other policy, it cannot be interpreted as an expression of intent as to the second policy

only. We have been cited to no case and have found none in our research where an express trust has been upheld with as little indication of its establishment as that adduced here. All have considerably more oral and written evidence of the deceased's intention than can be garnered from the meager statements in this record. The closest case is Donithen v. Independent Order of Foresters, 209 Pa. 170, 58 A. 142 (1904) which marks the extreme outer limits in which a trust was found. Even there the record contained more than is present here, such as the favorable financial situation of the designated beneficiary, the minority of the widow and lack of trust by decedent of the widow's mother, and repeated evidence from independent witnesses that the policies were intended by insured for his wife's benefit. While the normal inclination of a man to protect his wife and children is a circumstance to be considered in determining intent, such circumstance cannot become a substitute for actual intent.

The accepted definition of a constructive trust in Missouri is found in Gwin v. Gwin, 240 Mo.App. 782, 219 S.W.2d 282, (1949) l.c. 285:

"A constructive trust does not arise by virtue of any agreement or intention of the parties, actual or implied, but is implied by law, independently of their intention to create a trust. Suhre v. Busch, 343 Mo. 679, 123 S.W.2d 8. 'Obviously the constructive trust is not the product of the intent of the parties.' Kerber v. Rowe, supra, 348 Mo. 1125, 1130, 156 S.W.2d 925, 927; 3 Bogert, Trusts and Trustees, § 471. It is a device or method of the law of equity to effect restitution or to rectify a situation where a party has been wrongfully deprived of some right, title or benefit in property as a result of a fraud or violation of confidence or faith reposed in another. Fraud, actual or constructive, is the essential element of a constructive trust . . . ."

A constructive trust is "a device used by a court of equity to provide a remedy in cases of actual or constructive fraud to prevent unjust enrichment." Murphy v. Olds, 508 S.W.2d 249 (Mo.App.1974) [5–7].

■ Although the language in some of the cases is quite broad, a constructive trust cannot be imposed simply because a court of equity believes a decedent should have done something other than he did with his property. In Suhre v. Busch, 343 Mo. 679, 123 S.W.2d 8 (1938) [4] the condition for a constructive trust was limited to circumstances where the legatee or named beneficiary promises (and the decedent relies on such promise) that he will utilize the property or convey it for certain purposes or for the benefit of certain persons and then breaches that promise and attempts to keep the property himself. Such a situation is not present here, for there is no evidence that defendant ever indicated to her son that she would hold the proceeds for plaintiff, or even that she was aware that she was the beneficiary until after his death. There is no evidence that she was in a confidential relationship with either decedent or plaintiff so as to justify a presumption of fraud. See Etheridge v. Hammer, 450 S.W.2d 207 (Mo. 1970) [4]. There is no evidence that decedent ever communicated a desire to his mother that the proceeds be used for the benefit of his wife and child. If such was his intention it was never communicated to the beneficiary named in his policies, before or after death, and we cannot premise even constructive fraud upon the failure to adhere to an unknown and unexpressed state of mind of decedent.

■ Nor does this case fit into that category of case where the constructive or equitable trust is based upon the fraud of the decedent. These situations arise where the decedent in violation of a contractual or legal obligation, such as a divorce decree, makes a disposition of property, usually without knowledge of the person entitled to it and sometimes without knowledge of the person receiving it.[4] Here there was no legal obligation for decedent to make plaintiff his beneficiary. No contractual obligation was proved, and the law of this State, while protecting a spouse from disinheritance by will, does not afford such protection where insurance is involved. It is not proper for the courts to afford such protection where the legislature has declined to do so.

Mrs. Bellville's statement after her son's death was at most an unenforceable expression of an intent, unsupported by consideration. Her change of heart thereafter is a matter for her conscience, not that of equity.

In view of what has been said we are unable to find legal support for the trial court's Solomonic judgment. We cannot comment on or pass judgment on the defendant's action in appealing the trial court's attempt to afford both parties a partial recovery. Moral judgments must originate from a higher source than this court.

Judgment reversed and cause remanded with directions to enter judgment for defendant Bellville on both policies.

CLEMENS and McMILLIAN, JJ., concur.

---

4. See Prudential Insurance Company of America v. Gibson, 421 S.W.2d 26 (Mo.App. 1967) applying equitable trustee concepts in such a situation.