In the Matter of James H. SCHNITZ, Debtor.

MISSOURI DEPARTMENT OF CONSERVATION, State of Missouri, Plaintiff,

v.

James H. SCHNITZ, Defendant.

No. 84–1145–CV–W–5.

United States District Court, W.D. Missouri, W.D.

June 25, 1985.

---

Richard G. McMorris, Kansas City, Mo., for plaintiff.

Carolyn DeRoos, Jefferson City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, District Judge.

The issue in this bankruptcy appeal is whether an agreement between the debtor/appellant and creditor/appellant Missouri Department of Conservation by which the debtor was authorized to issue hunting and fishing permits created an express trust. Following a hearing, the Bankruptcy Court held that a trust had been created, and that the debtor's defalcation while acting in a fiduciary duty rendered a debt of $2,685.14 nondischargeable pursuant to 11 U.S.C. § 523(a)(4) of the Bankruptcy Code. For the following reasons, this Court reverses and concludes that no trust was created by the agreement and, therefore, the debt was dischargeable.

Although the parties are in disagreement as to the correct legal conclusion in this case, there is no dispute as to the facts which are set forth in the Bankruptcy Court's opinion as follows:

On December 11, 1980, James H. Schnitz, debtor/defendant (hereinafter Schnitz), entered into an Agreement with Plaintiff, Missouri Department of Conservation, where Schnitz was appointed as a hunting and fishing permit issuing agent for Jackson County, Missouri. This relationship was documented by a Permit Issuing Agreement which Schnitz dated and signed. (PL Ex. 2). The Agreement sets forth guidelines which the Permit Agent must follow. For example, the Agent may only sell the hunting and fishing permits, collect the money, and remit the sale proceeds, less the seven percent (7%) fee "not less than once monthly or at any time the amount reaches or exceeds $500.00..." (Permit Issuing Agent Agreement ¶ 3). Schnitz sold these permits to the public from his own business, Coast to Coast Hardware, located in Oak Grove, Missouri.

The Agreement also establishes conditions regarding the permits, records, and funds collected. All permits and records remain property of the Missouri Conservation Commission. Id. at ¶ 1. The Agreement also states that "[i]t is further understood that monies collected from the sale of hunting and fishing permits are State funds and any use of such funds for personal gain is prohibited by law and is a felony." Id. at ¶ 3.

Finally, the Agreement states that all monies received are held in trust for the Missouri Conservation Commission.

Plaintiff additionally produced the Manual for Hunting and Fishing Permit Issuing Agents which outlines the agent's responsibilities and procedures in more detail, (PL Ex. 1), and a certified copy of the State Audit for the Department of Conservation. On page nine (9) under the heading of Remittance Procedures, the Manual clearly states that the permit money is held in trust and that a report and remittance must be made at least once a month. The audit reveals that the Department of Conservation has a financial statement entry entitled "Trust Fund" with a balance of about five (5) million dollars.

It is apparent from the testimony and pleadings that Schnitz failed to follow these required guidelines. He merely placed the funds collected from the sale of the permits into his general business checking account. From this account he commingled funds and paid his general expenses. Over the course of several months, he continually had insufficient funds to remit the sale proceeds to the Department of Conservation. The Department of Conservation contends it is owed $2,685.14, while the Debtor scheduled the claim for $3,685.14. The repeated demands for payment created no response, so the Department of Conservation was preparing to file its suit in the state court. Schnitz claims that no one contacted him in person, only by letter. After thirty days, all contact ceased. However, on September 21, 1983, Schnitz voluntarily filed for relief under Chapter 7 of the Bankruptcy Code. Plaintiff seeks to have this debt excepted from discharge based upon defalcation while acting in a fiduciary capacity.

In the instant case, the Bankruptcy Court determined that an express trust was created by the licensing agreement with the State of Missouri. The Bankruptcy Court's conclusions of law are in part set forth as follows:

Generally the term "fiduciary capacity" is associated with the notion of a trust or confidence relationship arising when one's property is placed in the custody of another. See, e.g. *In re Niven*, 32 B.R. 354 (Bkrptcy.W.D.Okla.1983). For purposes of dischargeability of a debt, "fiduciary capacity" means an express or technical trust, not a trust imposed ex-maleficio. See, *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 [55 S.Ct. 151, 79 L.Ed. 393] (1934). "The relationship must be created prior to the act of wrongdoing and not be a result of the act." *In re Marshall*, 24 B.R. 105, 107 (Bkrptcy.W.D.Mo.1982). The fact that a commercial agreement contains the word, "trust," does not automatically create a trust agreement or fiduciary relationship. *In re Paley*, 8 B.R. 466, 469 (Bkrptcy.E.D.N.Y.1981). The Court must analyze the substance of the relationship and not its form when determining if an express or technical trust exists. Id.

There are several factors to consider when characterizing a potential trust relationship. First, an explicit declaration of the creation of a trust is necessary. Second, there should be a clearly defined res. Third, the parties need to intend to create a trust. *In re Cairone*, 12 B.R. 60, 62 (Bkrptcy.D.R.I.1981). Finally, a separation of legal title and equitable ownership of the res is necessary. *In re Adkisson*, 26 B.R. 879, 882 (Bkrptcy.E.D. Tn.1983).

*In re Cairone*, 12 B.R. 60 (Bkrptcy.D. R.I.1981) involves a lottery sales agent license from the State of Rhode Island. Debtor failed to remit proceeds of the sale to the state. According to state law, the proceeds of the sale were held in trust for the state. The Court, finding the debt non-dischargeable, reasoned that:

"[b]y applying for and accepting a Lottery Sales Agent license, the Debtors became subject to the obligations imposed by the State, including the requirement that the monies they collected belonged to the State of Rhode Is-

land and were to be held by them in trust for the State until delivered to the Commission. The relationship between the Cairones and the Lottery Commission was clearly of a fiduciary nature."

Id. at 63.

*In re Niven,* 32 B.R. 354 (Bkrptcy.D. Okla.) concerns a "Trust Agreement" to sell money orders to the public. Defendant failed to pay the sums due to the plaintiff company and commingled the proceeds of the sale with other business funds. The Court stated that each case should be scrutinized according to the facts, finding the debt non-dischargeable because the res was clearly defined.

By contrast, the debtor, in the case at bar, relies primarily upon *Matter of Lucas,* 21 B.R. 585 (Bkrptcy.W.D.Pa.1982) which involves a debtor who sold hunting and fishing licenses and was required to remit the proceeds, less commissions, to the Commonwealth at least once a month. The Court found that no express trust existed thereby discharging the debt. Even though the facts in *Lucas* appear virtually identical to the case at bar, it may be distinguished for one crucial reason. The Pennsylvania statute establishing the relationship does not state that the funds are held in trust and no other evidence was presented to establish a trust relationship. 30 P.L. § 2711 (Supp.1984).

In the case at bar, the Court must determine whether a fiduciary relationship exists between the parties. The Court finds that an express trust was created for the following reasons: 1) the permits and records remain property of the Conservation Commission, thereby retaining legal title in the Department of Conservation and equitable ownership in the debtor; 2) the Permit Agreement and Manual clearly state that the funds from the sale are held in trust for the Department of Conservation; 3) it is a felony to use the money from the sale of permits for personal use; 4) the financial statement for the Department of Conservation has a specific account for a "Trust Fund"; 5) the res is clearly identified as the amount received the sale of the permits, less a 7% commission; 6) the Department of Conservation intended to create a trust, and by signing the Agreement, Schnitz also agreed, and 7) the trust arose before the defalcation.

Once the fiduciary relationship is established, the plaintiff must prove that Schnitz committed defalcation. " 'Defalcation' has been defined as 'the failure of one who has received monies in trust to pay it over as he ought...' " *In re Niven,* 32 B.R. at 355–356, quoting *In re Herbst,* 22 F.Supp. 353, 354 (D.C.S.D.N.Y.1937). This term is broader than fraud or embezzlement. Id. The debtor has admitted his failure to pay the monies due by listing the Department of Conservation as a creditor in the amount of $3,685.14. Additionally, within the Defendant's Suggestions in Opposition to Plaintiff's Motion for Summary Judgment, Defendant states that:

"the only thing that happened was that the Respondent sold numerous hunting licenses, deposited the funds in the bank account with all the other funds that was (sic) received during the normal operation of the store, and then deposited those funds in his bank to pay debts as they became due. The problem in this case was that more utility bills and rent came due than there were funds in the bank, and it became necessary for the Respondent to file bankruptcy."

Because the debtor/defendant cannot remit the funds received from the sale of the permits to the Department of Conservation the Court finds that a defalcation occurred. According to testimony, the final audit determined that the amount due is $2,685.14.

This Court finds that Plaintiff has met its burden of proof. Based upon the conclusion that Schnitz committed a defalcation while acting in a fiduciary capacity, the debt for $2,685.14 is non-dischargeable.

According to 11 U.S.C. § 523(a)(4), an individual debtor is not discharged from a debt arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." As used within the meaning of this statute, the "term 'fiduciary' applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity." *In Re Johnson,* 691 F.2d 249, 251 (6th Cir.1982). "A debt created while acting in a fiduciary capacity is a special debt, created by a breach of special trust obligations defined by law, and is separate and distinct from any underlying contractual debt which arises from a bankrupt's agreement with respect to goods or services." *Id.*

In determining whether a trust exists, the Court must analyze the facts in light of controlling state law. Although the "question of who is a fiduciary for purposes of § 17(a)(4) (prior version of § 523(a)(4)) is one of federal law, ... state law is important in determining whether a trust relationship exists." *In Re Johnson,* 691 F.2d at 251. Generally, for a valid express trust to arise under Missouri law "there must be a beneficiary, a trustee, a trust so sufficiently described or capable of identification that the title thereto can pass to the trustee, and an actual delivery of the trust corpus..." *Potter v. Winter,* 280 S.W.2d 27, 33 (Mo.1955). It is not essential to the creation of a trust that any particular form be followed, or that the words "trust" or "trustee" or their equivalent be used. *Gardner v. Bernard,* 401 S.W.2d 415, (Mo.1966). Likewise, mere use of the word "trust" in an agreement is not sufficient to create a valid trust. *See In Re Long,* 44 B.R. 300, 305 (Bkrptcy Minn. 1983). The fundamental nature of a trust is the division of legal and equitable title. *McDaniel Title Co. v. Lemons,* 626 S.W.2d 686, 690 (Mo.App.1981).

The burden of proof in challenging the dischargeability of a debt under § 523 is on the party seeking the objection to the discharge. *Schlect v. Thornton,* 544 F.2d 1005, 1006 (9th Cir.1976); *Household Finance Corp. v. Danns,* 558 F.2d 114, 116 (2nd Cir.1977). *See also In Re Ridgway,* 24 B.R. 780, 784 (Bkrptcy Kan.1982) ("Given the fresh start policy of bankruptcy, creditors objecting to discharge or to dischargeability have a heavy burden of proof.") Exceptions to discharge are to be narrowly construed against the creditor and in favor of the debtor. *In Re Vickers,* 577 F.2d 683, 687 (10th Cir.1978). Under Missouri law, "the evidence of a trust must be clear and explicit leaving no room for a reasonable doubt that a trust was intended." *Forester v. Bellville,* 513 S.W.2d 726, 729 (Mo.App.1974). "No particular words are required to establish a trust but the intent to create 'must be clearly expressed by words or conduct or both' and the evidence must be so cogent, clear and convincing as to dispel any doubt in the Court's mind." *Id.*

In the instant case, the appellee/creditor argues that an express trust was created because the Permit Agreement and a Department of Conservation Manual state that the licensing agent is to hold acquired funds "in trust" for the Department of Conservation, and because the financial statement for the Missouri Department of Conservation maintained an account entitled "trust fund." It must be emphasized, however, that the mere presence of the term "trust" in a contract "is generally insufficient, in and of itself, to create a trust and transform the relationship between the parties from that of a debtor and creditor to that of a trustee and beneficiary." *In Re Martin,* 35 B.R. 982, 985 (Bkrptcy Pa.1984). "The resulting obligation is not turned into one arising from a trust because the parties have chosen to speak of it as a trust." *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 154, 79 L.Ed. 393 (1934). "Mere use of the words 'trustee,' 'trust,' or 'express trust' does not alone create a fiduciary relationship within the context of section 523(a)(4)." *In Re Long,* 44 B.R. at 305. It is "well-settled that the mere presence of language in an agreement purporting to

create a trust is not determinative for purposes of nondischargeability." *Matter of Emporelli*, 42 B.R. 814, 819 (Bkrptcy Pa. 1984). "The Court will look not only at the language, but at the relationship and acts of the parties to determine whether a trust exists." *In Re Long*, 44 B.R. at 305. Moreover, neither the use of the words 'express trust' nor the existence of a collateral account, into which proceeds from receivables were to be deposited in order to segregate the money ..., alone, nor in conjunction, create a fiduciary relationship where the substance of the relationship between the parties was that of creditor/debtor." *Long*, 44 B.R. at 305.

In the instant case, there was no requirement in the licensing agreement that the debtor segregate the funds collected pursuant to the Agreement. Although state law prohibits the personal use of funds derived from the sale of licenses, such a restriction is not sufficient to create a trust. *See Matter of Angelle*, 610 F.2d 1335, 1340 (5th Cir.1980) (Court rejects contention that "a statute which merely makes misappropriation of funds a crime—without, for example requiring segregation of accounts— would be enough to charge the parties with an intent to create a trust.") On the contrary, a "fiduciary relationship requires a separate account." *Matter of Graham*, 7 B.R. 5, 7 (Bkrptcy Nev.1980). *See also In Re Paley*, 8 B.R. 466, 469 (Bkrptcy E.D.N.Y.1981) (no trust existed where debtor was not under a duty to segregate funds).

In *In Re Cairone*, 12 B.R. 60 (Bkrptcy R.I.1981), the Bankruptcy Court held that a fiduciary relationship existed between debtors, as lottery sales agents, and the Rhode Island Lottery Commission, and concluded that the failure of the agents to remit certain proceeds from lottery sales constituted a nondischargeable debt. In *Cairone*, however, the parties agreed that the proceeds in question were trust funds under a state statute which imposed "trust-like duties on the agent in handling the funds, requiring the proceeds to be segregated from all other monies and holding the sales agent personally liable for all collected proceeds." *Id.* at 62. In the instant case, there are no "trust-like duties" requiring segregation of accounts imposed by contact or by statute.

Factually, the case at bar is similar to *Matter of Lucas*, 21 B.R. 585 (Bkrptcy Pa.1982), *aff'd American Insurance Co. v. Lucas*, 41 B.R. 923 (D.Pa.1984). In *Lucas*, the debtor was appointed as an agent of the State of Pennsylvania to sell hunting and fishing licenses and remit the proceeds less commissions to the state. State statutes required that license fees less the agent's commissions shall be paid into the state treasury at least once a month. There was no reference to any duty to segregate accounts, and the fees due the state were commingled by the debtor with other funds. In affirming the Bankruptcy Court's conclusion that the debts were dischargeable under § 523(a)(4), the District Court rejected the state's contention that the state statute creates the fiduciary relationship. 41 B.R. at 925–26. The Court noted that § 523(a)(4) does not apply to the fraud of agents, bailees, or brokers, and concluded that there was insufficient evidence to establish a trust relationship. *Id.*

Although the statute in *Lucas* did not state that the funds were to be held in trust, such a distinction does not warrant a contrary result in the instant case. Although the agreement states that the funds are to be held in trust, a "trust clause inserted in a document which sets up a debtor-creditor relationship in an effort to assure the debtor's performance does not create a trust." *Matter of Graham*, 7 B.R. at 7. "In the absence of a true fiduciary or trust relationship, a plaintiff may not circumvent the effect of a bankruptcy discharged by adding 'trust language' to an ordinary commercial agreement." *In Re Paley*, 8 B.R. 466, 469 (Bkrptcy E.D.N.Y.1981). In the instant case, the intent to create a trust was not clearly expressed, nor were trust-type duties imposed on the debtor. The debtor did not segregate the funds acquired pursuant to the agreement, nor was he required to do so. Furthermore, there was no real separation of equitable and legal

title with respect to the trust res. Accordingly, the Court finds that the appellee failed to meet its burden of proof and concludes that the debt of $2,685.14 is discharged. Therefore, it is hereby

ORDERED that the memorandum opinion and order of the Bankruptcy Court of September 28, 1984 is reversed. It is further

DECLARED that the debtor's debt of $2,685.14 to the Missouri Department of Conservation is discharged.