**Ximin QIN aka Sam Chin, Debtor.**

**Ru Jan Yang aka Rujan Yang Living Trust, Plaintiff,**

v.

**Ximin Qin aka Sam Chin, Defendant.**

**Bankruptcy No. 00–02997. Adversary No. 01–9042.**

United States Bankruptcy Court, N.D. Iowa.

Sept. 6, 2002.

David Nadler, Cedar Rapids, IA, for debtor.

**294**

Joseph A. Peiffer, Cedar Rapids, IA, for plaintiff.

Wesley B. Huisinga, Cedar Rapids, IA, trustee.

## ORDER

PAUL J. KILBURG, Chief Judge.

On July 18, 2002, the above-captioned matter came on for trial pursuant to assignment. Plaintiff Ru Jan Yang appeared by Attorney Joseph Peiffer. Debtor/Defendant Ximin Qin appeared by Attorney David Nadler. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF THE CASE

Plaintiff alleges that he entered into a trust agreement with Debtor whereby he gave Debtor $15,000 to hold in trust for Plaintiff's children when they came to the United States from China. He asserts that Debtor disposed of the funds prior to filing his Chapter 7 bankruptcy petition. Plaintiff asserts that this constitutes fraud in a fiduciary capacity and is, therefore, nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

Debtor asserts that the most that can be shown is that Plaintiff and Debtor entered into a debtor-creditor relationship. He argues that a promissory note entered into between the two parties evidences nothing more than a loan which Debtor was unable to repay. Therefore, Debtor asserts that any obligation owing to Plaintiff is dischargeable.

### FINDINGS OF FACT

Neither Plaintiff nor Debtor were present at trial. It appears that Plaintiff, Mr. Yang, is living in China. Counsel for Debtor advised the Court that he has lost contact with his client and does not know Debtor's whereabouts.

The entire evidentiary record made at trial consisted of written documents and the testimony of Mr. Edgar E. Lim. Mr. Lim is an attorney licensed to practice in Missouri. He testified that he represented Plaintiff for four years.

Numerous objections were made by both parties to the admissibility of everything that was offered into evidence. Without regard to the admissibility of any of the evidence, it appears that Plaintiff is a citizen of China. He lived in the United States for some time. He was married in China and his first wife passed away. Plaintiff had two children of that marriage who are now grown and over the age of 25 years. He remarried and lived in Missouri where he owned and operated a Chinese restaurant. His second wife died in July of 1998. Plaintiff was charged with her murder and pled guilty to second degree murder in December of 1999. He was not incarcerated pending sentencing and was given a right of surrender. After the entry of the plea of guilty, but prior to sentencing, Plaintiff left the United States. He may have first gone to Toronto, Canada, where he has relatives, before returning to China. Presumably, there is a warrant out for Plaintiff's arrest because of his failure to appear at sentencing, although Mr. Lim was vague about the present status of the criminal case.

In January 2000, Plaintiff gave Debtor $15,000. A promissory note was offered into evidence dated January 7, 2000. (Debtor's Exhibit A). It is a simple promissory note in the amount of $15,000 with interest at 6% per annum and payable six months after the date of making of the note. The note makes no reference to any type of trust or fiduciary relationship. Debtor repaid $5,000 to Plaintiff in Febru-

ary, 2000. No further payments were made.

Mr. Edgar Lim is an attorney licensed in Missouri and practicing in St. Louis. He has known Plaintiff for approximately four years and has represented him in various legal matters including acting as co-counsel in the criminal proceedings on the murder charge. He began to represent Plaintiff in this matter in the middle or spring of 2000. Presumably by then, Plaintiff had left the United States. Nevertheless, Plaintiff supposedly asked Mr. Lim to attempt to get the money back from Debtor. Mr. Lim wrote several letters to Debtor and talked to him on the phone three times.

Mr. Lim's direct knowledge concerning this case consists of the three telephone conversations with Debtor. The remainder of his "knowledge" is based on what Plaintiff and others told him. The first phone call occurred in the summer of 2000 and the other two in the latter half of 2000. According to Mr. Lim, Debtor said in the first conversation that he had spent the money on his business and didn't have it anymore. Mr. Lim also testified that at some point Debtor acknowledged that the money was to be used for or given to Plaintiff's children when they came to the United States. Debtor also asked Mr. Lim when Plaintiff's children would be coming to the United States. In the second conversation, Debtor stated that he needed more time to pay back the money and again inquired when Plaintiff's children would be coming to the United States. In the third conversation, Debtor stated that he would try to borrow money to return to Plaintiff's children.

Debtor filed a Chapter 7 petition in this Court on November 16, 2000. Mr. Lim filed Plaintiff's original complaint objecting to the discharge of this debt by Debtor under § 523(a)(4). Subsequently, the complaint was amended, Mr. Lim withdrew as counsel and Plaintiff's present counsel, Joseph Peiffer, appeared on Plaintiff's behalf. Mr. Lim is not a blood relative of Plaintiff although in several of his letters he refers to Plaintiff as "uncle." Mr. Lim testified that this is a term of friendship and respect and does not denote actual kinship. Plaintiff owes Mr. Lim attorney's fees of about $500.

It is not clear whether Plaintiff actually authorized Mr. Lim to commence this complaint prior to it being filed. Mr. Lim testified that there was no discussion about how any net proceeds would be divided if a recovery is made from Debtor. Mr. Lim apparently has not been compensated for his trip from Missouri to Iowa for trial in this matter. Mr. Peiffer's fees are apparently guaranteed by Mr. Lim and not by Plaintiff. Mr. Lim testified that he has taken these steps on behalf of Plaintiff because it was not right for Debtor to keep money that Plaintiff had given him to hold for Plaintiff's children.

Mr. Lim acknowledged that there is no document that he is aware of which makes reference to a trust. In a letter to Debtor in June 2000, however, Mr. Lim states that the funds are to be paid to the Rujan Yang Irrevocable Living Trust. The exact nature of this alleged trust is not explained.

Mr. Lim has handled most of these proceedings on behalf of Plaintiff without Plaintiff's direct involvement. Debtor proffered Interrogatories to Plaintiff during discovery in this matter. Mr. Lim testified that Plaintiff personally appeared in his office on January 29, 2002 and executed the responses to the interrogatories in his presence after which Plaintiff presumably again left the United States.

## EVIDENTIARY ISSUES

Neither Plaintiff nor Debtor was personally present to testify. Counsel for

Debtor justifiably made hearsay objections to Mr. Lim's testimony regarding statements allegedly made by one or the other of the parties. Plaintiff's statements in answers to interrogatories or requests for admissions are accepted as admissible. Further, Plaintiff did not admit or deny that he is a fugitive from justice in response to Debtor's fifth request for admissions. Pursuant to the rules of procedure, this now stands as admitted and conclusively established. Fed. R. Bankr.P. 7036; Fed.R.Civ.P. 36(a). Mr. Lim's testimony beyond these admissible matters is arguably all hearsay.

Though arguably much of this record is excluded as hearsay, in light of the Court's ultimate conclusions, the Court will consider the evidence presented and evaluate it accordingly. Much, if not all, of what Plaintiff is attempting to establish is anchored by Mr. Lim's testimony concerning the three telephone calls with Defendant. Because he has elected to abrogate his role as attorney and become a fact witness, Mr. Lim's credibility is placed in issue.

Mr. Lim represented himself as Plaintiff's attorney. However, even though he served as attorney, the record reveals a relationship which transcends that of attorney-client in numerous ways. Mr. Lim referred to Plaintiff as "uncle"; a term which is reserved for someone more closely associated than attorney-client. Mr. Lim, with little, if any, apparent authority, filed this adversary complaint. Though owed attorney fees, Mr. Lim came to Cedar Rapids at his own expense to testify. Apparently, Mr. Lim has guaranteed Mr. Peiffer's attorney fees. Additionally, Plaintiff made a trip to St. Louis in January 2002. However, Mr. Lim offered to meet him in Detroit instead. The reason this offer was made is unexplained.

■ These matters all establish that Mr. Lim may have an interest in the outcome which exceeds that which an attorney would ordinarily have. In weighing the credibility of witnesses, the Court may consider their interest in the outcome, their motive, candor, and biases. This record reveals, without a doubt, that Mr. Lim's interest in this case subjects his testimony to such scrutiny.

The oral conversations between Mr. Lim and Defendant occurred almost two years ago. Witnesses' memories concerning oral communications are not always precise. This, coupled with Mr. Lim's obvious interest, establishes that the testimony is not entitled to substantial weight.

■ Counsel for Debtor objected to admission of parol evidence regarding the existence of a trust, in light of the existence of the promissory note which makes no mention of a trust. Parol evidence is admissible regarding circumstances surrounding the creation or existence of a trust. Debtor's parol evidence objection is not well founded.

## DEFALCATION IN FIDUCIARY CAPACITY

An individual debtor in a chapter 7 case is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity. . . ." 11 U.S.C. § 523(a)(4). To prevent discharge of a debt under § 523(a)(4), Plaintiff must establish, by a preponderance of the evidence, two elements: (1) that a fiduciary relationship existed between Plaintiff and Debtor, and (2) that Debtor committed fraud or defalcation in the course of that fiduciary relationship. *In re Shahrokhi*, 266 B.R. 702, 707 (8th Cir. BAP 2001).

■ Whether a relationship is a fiduciary relationship within the meaning of 11 U.S.C. § 523(a)(4) is an issue of federal law. *In re Cochrane*, 124 F.3d 978, 984 (8th Cir.1997). The fiduciary relationship

must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt. *Id.* The defalcation exception does not apply to a constructive trust or mere contractual relationship. *Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir.1993).

▮ Bankruptcy courts regularly look to state law to determine whether fiduciary capacity exists. *In re Long,* 774 F.2d 875, 878 (8th Cir.1985); *In re Kondora,* 194 B.R. 202, 208 (Bankr.N.D.Iowa 1996). The "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law. *In re Cook,* 263 B.R. 249, 255 (Bankr.N.D.Iowa 2001). State law is therefore critical in determining whether a party has acted in a fiduciary capacity. *Id.*

▮ The fiduciary relationship of § 523(a)(4) generally does not encompass ordinary commercial relationships such as debtor-creditor or principal-agent. *In re Dove,* 78 B.R. 630, 636 (Bankr.M.D.Ga. 1986). "Unless the parties intended a trust, defined a trust res, and gave specific duties regarding the trust funds or unless a statute imposes a trust, the fiduciary relationship contemplated in § 523(a)(4) does not extend to financing arrangements or security agreements." *Id.*(finding language of promissory note did not impose a trust).

In *In re Tallant,* 207 B.R. 923, 929 (Bankr.E.D.Cal.1997), *rev'd in part on other grounds,* 218 B.R. 58 (9th Cir. BAP 1998), a client lent money to his attorney, the debtor. The court found that, despite the attorney-client relationship, the transaction did not fall within § 523(a)(4). *Id.* at 930. It noted:

In the case at bar, nothing about the transaction itself establishes an express or technical trust. Kaufman [the client] simply lent Tallant [the attorney/debtor] money; both parties understood Tallant was free to use the funds to serve his personal ends, and they memorialized the understanding in an ordinary promissory note. In other words, the parties stood in a typical lender-borrower relationship. This lender-borrower agreement stands in sharp contrast to a trust relationship. There, the trustee receives money or property on behalf of the beneficiary—the trust res—and holds the funds solely and separately for the benefit of the beneficiary. Moreover, the trust relationship bars the trustee from commingling the funds with his own or misappropriating the funds to his own use, and imposes a duty on the trustee to render a complete and accurate accounting to the beneficiary. Here, Kaufman imposed no such duties on Tallant, and Tallant was free to use the funds for his own purposes.

*Id.* at 929.

▮ Generally, for a valid express trust to arise under Missouri law "there must be a beneficiary, a trustee, a trust so sufficiently described or capable of identification that the title thereto can pass to the trustee, and an actual delivery of the trust corpus." *In re Schnitz,* 52 B.R. 951, 955 (W.D.Mo.1985). The fundamental nature of a trust is the division of legal and equitable title. *Id.* (finding no fiduciary relationship where intent to create a trust was not clearly expressed, nor were trust-type duties imposed on the debtor; debtor did not segregate funds and there was no separation of equitable and legal title of the trust res).

▮ Under Missouri law, the intent to create a trust must be clearly expressed by words or conduct or both, and "the

evidence must be so cogent, clear and convincing as to dispel any doubt in the Court's mind." *Duncan v. Duncan*, 884 S.W.2d 383, 386 (Mo.App.1994); *Forester v. Bellville*, 513 S.W.2d 726, 728 (Mo.App. 1974). An express trust in personalty may be created and proven by parol evidence through express declarations and also by surrounding circumstances. *Forester*, 513 S.W.2d at 729. The record must establish when the trust was created, what constituted its res, and what enforceable duties were imposed. *Id.*

## CONCLUSIONS

■ This Court concludes the debt to Plaintiff is not excepted from discharge under § 523(a)(4). Plaintiff has the burden to prove it is more likely than not that Debtor was acting in a fiduciary capacity under an express trust when he received the funds from Plaintiff. As the transaction occurred in Missouri, the law requires evidence of the trust to be so cogent, clear and convincing as to dispel any doubt in the Court's mind as to the existence of the trust. There must have been a division of legal and equitable title to the funds at issue and enforceable duties imposed upon Debtor as trustee.

In evaluating all the circumstances, including the promissory note, the Court concludes this is a mere financing arrangement. The promissory note makes no mention of a trust. It imposes no special duties on Debtor, other than to repay the debt. Even accepting Mr. Lim's testimony as true, his conversations with Debtor show no more than that Debtor believed the note was due and payable to Plaintiff's children when they arrived in the United States. Mr. Lim's request for payment to the Rujun Yang Irrevocable Living Trust is not proof of a fiduciary relationship. There is no evidence that Debtor has any duties to the Living Trust or that he was even aware of its existence. Generally, Living Trusts are self-settled, making Plaintiff both trustee and beneficiary. Directing payment to the Living Trust is the same as saying the funds were due to Plaintiff himself.

Plaintiff accepted partial payment of the original $15,000 debt. There is no showing that he received the $5,000 payment for the benefit of his children. Plaintiff's acceptance of this partial repayment is inconsistent with his argument that the funds were given to Debtor to keep for Plaintiff's children when they arrived from China.

A fiduciary relationship has specific and stringent requirements under the law. The record here is as revealing for what is not shown as for what is actually established. The promissory note does not mention any type of trust relationship. There is no showing that Debtor was precluded from commingling the funds with his own. The record is devoid of any restriction on Debtor's use of the funds. Under this record, it is as likely as not that Plaintiff's children were to collect the debt at a later time because Plaintiff was about to or had already fled the country. Ultimately, this Court must conclude that the relationship is ambiguous at best. The most that can be reasonably concluded is that this was a debt memorialized by a promissory note. This does not approach the burden of proof necessary to establish a fiduciary relationship. Plaintiff has failed to establish that Debtor was holding these funds in a fiduciary capacity for Plaintiff or Plaintiff's children. As such, Plaintiff has not met its burden of proof and this debt is not excepted from discharge.

**WHEREFORE,** Plaintiff Ru Jan Yang's complaint for exception from discharge under § 523(a)(4) is DENIED.

**FURTHER,** Debtor's debt to Plaintiff in the amount of $10,000 is discharged.