**Melanie Platt TONKOVICH, f/k/a Melanie Ann Molasky, and Jonas Denos, f/k/a Jonas Molasky, Appellants,**

v.

**CROWN LIFE INSURANCE CO., and Canada Life Assurance Co., Respondents.**

**No. ED 85238.**

Missouri Court of Appeals, Eastern District, Division Three.

June 21, 2005.

---

Burton Newman, David Perney, Mark
E. Goodman, Jerome S. Kraus, St. Louis,
MO, for appellant.

Steven H. Schwartz, Jeffrey R. Baron,
Jack B. Spooner, St. Louis, MO, for re-
spondent.

NANNETTE A. BAKER, Judge.

Melanie Tonkovich and Jonas Denos
(collectively, "Heirs") filed a claim alleging
that Crown Life Insurance, Co. and Cana-
da Life Assurance Co. ("Insurance Compa-
nies") wrongfully paid insurance proceeds
to Allan Molasky as trustee for the A & G
Trust. The trial court determined that

there were no genuine issues of material fact and that the insurance companies were entitled to summary judgment. It denied Heirs' motion for summary judgment and granted Insurance Companies' motion for summary judgment. Heirs appeal.

## Background

Mark Molasky died intestate on January 29, 1990. Melanie Tonkovich and Jonas Denos were his only children and the only heirs to the estate of their father. Crown Life Insurance Co. and Canada Life Assurance, Co. insured the life of Mark Molasky ("Insured") for $5 million dollars under a life insurance policy ("the 552 Policy"). The policy was originally owned by Molasky Enterprises, Ltd. ("Molasky Ltd."). Molasky Ltd. was the sole owner and beneficiary. On September 9, 1977, Molasky Ltd. transferred 100 percent ownership rights to Melanjo Investment, Inc.[1] ("Melanjo") and designated Melanjo as the sole beneficiary of the policy. Allan Molasky, Insured's father, ("Allan") and Marti Ellen Rose, Insured's sister, ("Marti") were the sole directors of Melanjo. Allan was president and Marti was the sole shareholder. Melanjo, Allan, Marti and Insured's Mother, Gloria Molasky ("Gloria") paid the premiums on the 552 Policy. The premiums averaged approximately $150,000 per year, totaling over $2.5 million throughout the life of the policy. Insured and Heirs were never owners nor were they designated beneficiaries of the 552 policy. In addition, they did not pay any premiums on the policy.

On August 1, 1983, Melanjo executed a trust document known as the A & G Trust

("1983 Trust"). The trustees and primary beneficiaries of the 1983 Trust were Allan, Marti and Gloria. The trust document was signed by Allan, as president of Melanjo. Allan, Marti and Gloria signed as trustees. At the time the trust document was executed, no property was identified or placed in the trust. On January 28, 1985 Melanjo executed a Crown Life Policy Title Request ("Title Request") and transferred 80% ownership in the 552 Policy to the 1983 Trust. The Title Request also designated the 1983 Trust as a beneficiary of 80 percent of the policy proceeds.[2] No contingent beneficiary was named. Marti and Allan signed the Policy Title Request as trustees. On August 1, 1989 Melanjo, through Marti and Gloria, named the 1983 Trust contingent owner and contingent beneficiary of another life insurance policy ("755 Policy") which also insured the life of Mark Molasky. The 1983 Trust accepted cash dividends on the 552 Policy from 1985 through 1990. These dividends were used to pay part of the policy premiums on both policies.

Insured died on January 29, 1990. On February 1, 1990, Allan filed a death claim with Crown Life on the 552 Policy and signed it as co-trustee of the 1983 Trust. Crown Life paid $3.2 million to the "A & G Trust" as beneficiary of the 552 Policy. This was 80 percent of the net death benefits of the 552 Policy. The Insurance Companies did not require this request to be made under oath and did not request a copy of the 1983 Trust to confirm that the trust existed. In 1990 Allan opened a bank account in the name of the 1983 Trust, using the trust's federal tax identifi-

---

1. On December 14, 1982 Melanjo's corporate charter was involuntarily dissolved. On May 18, 1984 it was reinstated.

2. Melanjo also transferred 10% ownership to the Jonas Molasky Trust and 10% to the An-

drew Carey Rose Trust and designated each as beneficiaries of 10% of the policy proceeds. The Jonas Molasky Trust and the Andrew Carey Rose Trust are not at issue in this lawsuit.

**214**

cation number. He deposited the death benefits into that account. On February 7, 1990, Marti Ellen Rose executed a document entitled the "A & G Trust Dated February 7, 1990" ("1990 Trust"). In 1998, Melanie Platt Tonkovich filed suit against Allan, seeking an accounting relating to the 1983 Trust, ("the accounting suit"). Crown Life was not a party to that case. During discovery of the accounting suit, the depositions of Allan and Howard Wittner, ("Wittner") attorney for Allan and Melanjo, were taken. Wittner also filed an affidavit. In 2003, Heirs filed this action against Crown Life.

In Heirs' first point relied on, they contend that the trial court erred in granting Insurance Companies' motion for summary judgment because a genuine issue of material fact exists with respect to the manner in which the contract disposes of the insurance proceeds in the event that the A & G Trust is nonexistent. Heirs, in their second point, contend that the trial court erred in granting summary judgment to Insurance Companies because the evidence demonstrates that the 1983 Trust did not exist at the time of the death of Insured and the insurance contract did not provide a contingent beneficiary. Lastly, Heirs assert that the trial court erred in not entering summary judgment for Heirs because the 1983 Trust did not exist at the time of death of the Insured and the insurance contract did not provide a contingent beneficiary. We will address Heirs' second point first because it is dispositive. We affirm.

### Standard of Review

■ Review of a grant of summary judgment is de novo. *ITT Comm'l Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The Court will review the record in the light most favorable to the party against whom judgment was entered. *Id.* Additionally, the party against whom summary judgment was entered is entitled to all reasonable inferences from the record. *Hertel ex rel. Hertel v. Nationsbank N.A.,* 37 S.W.3d 408, 410 (Mo.App. E.D.2001). However, the facts set forth in support of a party's motion will be taken as true unless contradicted by the non-movant's response. *ITT Comm'l Fin. Corp.,* 854 S.W.2d at 376.

■ A party is entitled to summary judgment where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 74.04.[3] To demonstrate that summary judgment is proper, a defending party may present facts negating any element of the plaintiff's cause of action, show the non-movant has not, or cannot, produce evidence of the existence of any of those elements, or show there is no genuine issue of fact necessary to support the defending party's affirmative defenses. *ITT Comm'l Fin. Corp.,* 854 S.W.2d at 381. Once the defending party has made a *prima facie* showing, the burden shifts to the plaintiff to set forth specific facts, by affidavit, deposition, or otherwise, showing the existence of a genuine issue of fact. *Id.*

■■ A "genuine issue" is a real, nonfrivolous dispute that exists where the record contains competent, material evidence that two plausible, but contradictory accounts of essential facts in the case. *Ackerman Buick, Inc. v. Gen. Motors Corp.,* 66 S.W.3d 51, 54 (Mo.App. E.D.2001). Only those factual disputes that might affect the outcome of the case under the applicable law are considered "material" for purposes of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "gen-

**3.** All rule references are to Mo. Rules Civ. P.2004 unless otherwise indicated.

uine issue" is a dispute that is real and not merely argumentative, imaginary, or frivolous. *Ackerman Buick, Inc.*, 66 S.W.3d at 54. If the trial court's judgment is sustainable on any ground as a matter of law, even one different than that posited in the motion for summary judgment, the judgment should be sustained. *ITT Comm'l Fin. Corp.*, 854 S.W.2d at 387–88.

### Existence of the 1983 Trust

Heirs contend that the trial court erred in granting Insurance Companies' motion for summary judgment because the 1983 Trust did not exist at the time Insured died and the insurance contract did not provide a contingent beneficiary. Insurance Companies claim that the trust was valid under the Missouri Insurance Trust Statute, Section 456.030 [4] and that Melanjo had the specific intent to create the trust.

 To establish a valid, enforceable express trust, there must be (1) a beneficiary, (2) a trustee, (3) a trust res so sufficiently described or capable of identification that title thereto can pass to the trustee, (4) actual delivery, assignment or conveyance of legal title to the corpus to the trustee. *Atl. Nat. Bank of Jacksonville, Fla., v. St. Louis Union Trust Co.*, 357 Mo. 770, 211 S.W.2d 2, 5 (1948); *Estate of Harvey v. Luther Coll.*, 802 S.W.2d 585, 588 (Mo.App. W.D.1991). The evidence necessary to establish the validity of a trust, "must be clear and convincing and so full and demonstrative as to remove from the mind … any reasonable doubt with respect thereto." *Bank of Jacksonville*, 211 S.W.2d at 5.

 Heirs first claim that the 1983 Trust is not valid because it was improperly funded. Heirs argue that no property

was transferred to the trustees to be held in trust and thus the trust is invalid. However, the Missouri legislature enacted Section 456.030, the life insurance trust statute, in 1983. This statute states, in relevant part:

> Proceeds of life insurance policies heretofore made payable to a trustee or trustees named as beneficiary or hereafter to be named beneficiary under an inter vivos trust *shall be paid directly to the trustee or trustees* and held and disposed of by the trustee or trustees as provided in the trust agreement or declaration of trust *in writing made and in existence on the date of death of the insured,* whether or not such trust or declaration of trust is amendable or revocable or both, or whether it may have been amended, and notwithstanding the reservation of any or all rights of ownership under the insurance policy or annuity contract; subject, however, to a valid assignment of any part of the proceeds. *It is not necessary to the validity of such trust agreement or declaration of trust that it be funded or have a corpus other than the right, which need not be irrevocable, of the trustee or trustees named therein to receive such proceeds as beneficiary.*

(Emphases added). Under this statute and Missouri common law, a trust need not be funded or have a corpus except the right to receive proceeds of a life insurance policy. *See Duncan v. Duncan,* 884 S.W.2d 383 (Mo.App. S.D.1994). Therefore, this argument fails.

 Heirs also contend that the trust is invalid because the trust document was created a year and a half before the trust was named as owner and beneficiary of the 552 Policy. However, there is no require-

---

4. In 2004 Section 456.030 was renumbered to Section 456.005. All statutory references are to R.S.Mo 2000 unless otherwise indicated.

ment in Section 456.030 that the life insurance trust and the beneficiary designations be made simultaneously. The statute requires only that the trust be in writing and in existence *on the date of the death of the insured* and that the proceeds be payable to a trustee named as a beneficiary. Section 456.030 (Emphasis added).

Furthermore, there is no such requirement in the common law. There are four requirements to establish a valid trust. *See Atlantic Nat. Bank,* 211 S.W.2d at 5. The trust created in this case meets all four requirements. First, the trust must have a beneficiary. Beneficiaries of the 1983 Trust were Allan, Marti and Gloria. Second, the trust must have a trustee. Allan, Marti and Gloria were the named trustees. Third, there must be a trust res so sufficiently described or capable of identification that title thereto can pass to the trustee. At inception, the res of the 1983 Trust was the 552 Policy, which is a valid res under Section 456.030. Later, the 755 Policy was added to the trust. Lastly there must be actual delivery, assignment or conveyance of legal title to the corpus to the trustee. In this case, there was an actual conveyance of legal title when Melanjo executed the Title Request form. The Title Request transferred ownership of the policy from Melanjo to the 1983 Trust. It also made the 1983 trust beneficiary of 80% of the policy proceeds. There is no common law requirement that this must be done simultaneously with the drafting of the trust document.

In support of their argument, Heirs cite a 1964 Missouri Supreme Court case, decided well before the life insurance trust statute was enacted. However, the case does not support Heirs' proposition that the life insurance beneficiary designation must be made simultaneously with the execution of the trust document. Heirs cite the case language which states: "A trust cannot be created unless there is trust property." *Edgar v. Fitzpatrick,* 377 S.W.2d 314, 317 (Mo. banc 1964). This language is very general and does not indicate that a trust must be funded with property simultaneously with drafting.

In *Edgar,* a marital rights case, the court held that the decedent did not create a trust because he did not properly specify what property was to be transferred to the trust. *Edgar,* 377 S.W.2d 314. The decedent attempted to place in trust shares of stock that he did not yet own, but anticipated that he might buy in the future. *Id.* The Court determined that the declaration of property was indefinite. *Id.* The court, quoting Scott on Trusts, states "[The grantor] cannot . . . create a present trust, either by making a transfer to another in trust or by declaring himself trustee, unless he is the present owner of an interest in the property . . . Until the trust property is ascertained, no trust arises." *Id.*

The Heirs cite to language from *Trautz v. Lemp,* a 1932 case which the *Edgar* Court also cites.

The law relative to trusts provides that a trust must arise at the time it is attempted to be created, instead of being brought forth by subsequent and independent circumstances. The relation of trustee and cestui que trust must arise at time of the original, and be contemporaneous therewith, and cannot be brought forth by subsequent and independent circumstances. In order to create a valid express trust, it is necessary that some estate or interest be conveyed to the trustee, and, when the instrument creating the trust is other than a will, that estate or interest must pass immediately.

*Trautz v. Lemp,* 329 Mo. 580, 46 S.W.2d 135, 139. *See Edgar,* 377 S.W.2d 314, 318.

However, this language is inapplicable to the issue in this case. It is not about the timing of funding a trust. This language regards funding trusts with property as to which the grantor does not have a present interest, but only a future interest or expectancy. *Edgar*, 377 S.W.2d 314, 318. *See also, Penney v. White*, 594 S.W.2d 632, 639 (Mo.App. W.D.1980)(Citing *Edgar*) (One must have present power of disposition over trust property.); *Kully v. Goldman*, 208 Neb. 760, 305 N.W.2d 800, 802 (1981) (Citing *Edgar*) (It appears to be the universal rule that mere expectancies cannot be held in trust ... The Courts have uniformly held that no trust can be created unless there exists some property interest which may be held by the trustee for the claimant.) (citations omitted). *Crews v. Overbey*, 645 S.W.2d 388, 390 (Tenn.1983) (Citing *Edgar*)(The weight of authority supports the view that a declaration of trust in property to be acquired in the future does not create a present trust; it is essential to have a present interest in the property to be transferred to the trustee.); 4C Mo. Prac., Trust Code & Law Manual Section 2:2 (2005 ed.) (citing *Edgar*) (A person cannot create a trust of property he does not own. It is not enough that he ... expects to own it in the future.).

This case does not involve future interests or expectancies beyond what is allowed under Section 456.030. Melanjo was owner of the 552 Policy when the trust document was created. Melanjo was owner of the 552 Policy when it executed the Title Request, which transferred ownership of the property to the trustees and changed the beneficiary designation. Therefore, the trust property was in existence and owned by Melanjo at all relevant times and the law regarding future interests and expectancies as trust property does not apply to this case.

■ This court has already decided a case in which a beneficiary designation and life insurance trust were not executed simultaneously. *Hollis v. Estate of Hollis*, 845 S.W.2d 156 (Mo.App. E.D.1993). In *Hollis*, the grantor signed a beneficiary designation naming her two children as beneficiaries and her sister as trustee. *Id.* at 157. Sixteen days later, she drafted her own will, naming her sister as trustee for her children. *Id.* She wanted all of her assets, with a few named exceptions, to be included in the trust. *Id.* The court construed the two documents together and held that the time gap between the signing of the beneficiary designation and the creation of the testamentary trust did not prevent the formation of a valid trust. *Id.* at 159. The same reasoning applies in this case. The law does not require that life insurance beneficiary designations be made simultaneously with trust documents and thus Heirs' contention is erroneous.

■ However, even if one could interpret the statutes and case law in that manner, the trust in question in this case would still be valid. In *Edgar*, the court says that there is not trust property if the property is not definite, or definitely ascertainable, *but a trust may subsequently arise* when the property becomes definite or definitely ascertainable if the trustee later manifests an intention to create a trust. *Edgar*, 377 S.W.2d 314, 317. This language indicates that a trust document may be created at one time but an actual trust does not come into existence until a later time when a trust is properly funded and the trustee manifests an intention to create a trust. The *Edgar* Court found that the grantor did not make a later manifestation of intent to create a trust after he acquired more property, and thus it could not determine what was the property of the trust. *Edgar*, 377 S.W.2d 314, 317.

In this case Melanjo executed the Title Request form, which was a sufficient manifestation of intent to "revive" a trust under this principle. It transferred 80% ownership of the 552 Policy to "A & G Trust dated 1 August 1983." It also changed the beneficiary designations and designated the 1983 Trust as beneficiary of 80% of the proceeds of the 552 Policy. Allan and Marti signed the Title Request form as trustees of the A & G Trust. Transferring ownership and beneficiary rights of a multi-million dollar life insurance policy to the 1983 Trust is a significant and definite manifestation of intent to create a trust in specific property under *Edgar.*

### Intent

Heirs also contend that the trust is not valid because Melanjo lacked appropriate intent to create a trust. The intention of the creator of the trust is the paramount question. *Forester v. Bellville*, 513 S.W.2d 726, 729 (Mo.App.St.L.1974). The law of this state is well-settled that, absent any ambiguity in the terms, the intent of the grantor of a testamentary or inter vivos trust is to be ascertained from the four corners of the instrument without resort to parol evidence as to that intent. *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434 (Mo.App. W.D.2004). Thus, Missouri courts do not rely on extrinsic evidence of intent where the grantor of a trust has unambiguously expressed his or her intent. *Id.*

The document titled "A & G Trust" is a 19–page document. It details who the trustees and beneficiaries are, the purpose of the trust, the powers of the trustees, the distribution of the trust, and various other terms. On the first page of the trust, it says "the Grantor desires to create this Irrevocable Trust for the benefit of itself and the beneficiaries hereinafter provided for." The Title Request form transferred 80% ownership of the 552 Policy to "A & G Trust dated 1 August 1983." It also changed the beneficiary designations and designated the 1983 Trust beneficiary of 80% of the proceeds of the 552 Policy. Allan and Marti signed the Title Request form as trustees of the A & G Trust. Each of these documents, held together or separately, contain more than sufficient evidence that Melanjo intended to create a trust.

Heirs' only evidence that Melanjo did not intend to create a trust is the testimony taken from the depositions and affidavits created for the 1998 accounting suit filed by Melanie Tonkovich against the trustees. Heirs claim that these depositions and affidavits contain statements that prove that Melanjo did not intend to create a trust when it executed the 1983 Trust document. This is parol evidence, which should not be considered if the intent is clear from the four corners of the document. Point denied.

Accordingly, we find that the 1983 Trust was valid and Insurance Companies did not wrongfully pay the proceeds of the 552 Policy to the 1983 Trust. Heirs' other two points on appeal rest upon the invalidity of the 1983 trust and are therefore moot.

Affirmed.

CLIFFORD H. AHRENS, P.J., and GLENN A. NORTON, J., concur.